**STATE of Indiana, Appellant–Plaintiff,**

v.

**Eugene HOLLINS, Appellee–Defendant.**

No. 46A03–9512–CR–408.

Court of Appeals of Indiana.

Oct. 15, 1996.

Rehearing Denied Dec. 16, 1996.

Transfer Denied Feb. 19, 1997.

Pamela Carter, Attorney General of Indiana, Andrew L. Hedges, Deputy Attorney General, Indianapolis, for Appellant.

Craig V. Braje and Michelle A. Blackwell, Braje & Nelson, Michigan City, for Appellee.

## OPINION

STATON, Judge

The State of Indiana brings this appeal pursuant to IND. CODE § 35–38–4–2(5) (1993) contesting the trial court's grant of Eugene Hollins' ("Hollins") motion to suppress illegally seized evidence. The State raises the sole issue of whether the trial court erred in granting the motion to suppress.

We reverse and remand.

On late June 28 and early June 29, 1994, the Michigan City Police Department's ("MCPD") Drug Interdiction Team ("I–Team") was monitoring a home about which the MCPD had received several complaints concerning possible drug activity. The home was located in a neighborhood with a reputation for drug trafficking. During the surveillance, officers observed four or five vehicles pull up to the residence where persons would enter, remain a minute or two and then leave. Officer Swistek twice observed Hollins enter the house and then leave within a short time. On the second occasion, Officer Swistek observed Hollins carrying a clear plastic bag, although he could not identify the contents of the bag. Officer Swistek followed Hollins to a red and white Cadillac.

After Hollins drove away, Officer Swistek broadcast a description of Hollins, his automobile and his direction of travel. Officers Bush and Brinkman followed Hollins and pulled him over after he made a right turn without signaling. Officer Brinkman approached the automobile from the passenger side, shined his flashlight into the passenger compartment of the car and observed a clear plastic bag wedged half in and half out of the passenger seat which contained white powder he believed to be cocaine. As Officer Brinkman removed the bag, a film canister came out with it. Officer Brinkman opened the canister and discovered 30 rocks of what was later determined to be crack cocaine. Hollins was placed under arrest and charged with possession of cocaine with intent to deliver, a class A felony.[1] The trial court granted Hollins' motion to suppress the powder cocaine and the crack cocaine. The trial court found that Officers Brinkman and Bush did not have probable cause or a reasonable suspicion to stop and search Hollins' vehicle, thus violating his Fourth Amendment rights. This appeal ensued.

When we are evaluating the propriety of a warrantless search under the Fourth Amendment of the United States Constitution, we accept the factual findings of the trial court unless they are clearly erroneous.

---

1. IND. CODE § 35–48–4–1 (1993).

*Ornelas v. United States,* —— U.S. ——, ——, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996); *Brown v. State,* 653 N.E.2d 77, 81 (Ind.1995). Findings of fact are clearly erroneous when the record lacks any facts or reasonable inferences to support them. *Matter of Estate of Banko,* 622 N.E.2d 476, 481 (Ind.1993), *reh. denied.* When determining whether the findings are clearly erroneous, we consider only the evidence most favorable to the judgment and the reasonable inferences flowing from that evidence. *Id.* We will not judge witness credibility or reweigh the evidence. *Id.* However, the ultimate determination of reasonable suspicion or probable cause is reviewed *de novo. Ornelas, supra,* at ——, 116 S.Ct. at 1663; *Brown, supra,* at 81.

■ The uncontroverted evidence demonstrates that Hollins made a right-hand turn without using his turn signal.[2] In fact, the trial court expressly found that Hollins committed a traffic violation.[3] As a general matter, police officers may stop a vehicle when they observe minor traffic violations. *Whren v. United States,* —— U.S. ——, ——, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89, —— (1996); *Small v. State,* 632 N.E.2d 779, 782 (Ind.Ct.App.1994), *trans. denied.* However, Hollins argued, and the trial court accepted, that since the police had an ulterior motive in stopping Hollins' car, the stop and search were unconstitutional notwithstanding that Hollins committed a traffic violation. The State contends that the police officer's motive is irrelevant under the Fourth Amendment

provided there is probable cause or a reasonable suspicion otherwise justifying the stop.

The United States Supreme Court has recently addressed this very issue in *Whren.*[4] In *Whren,* police officers were patrolling a "high drug area" when their suspicions were aroused by a truck which remained stopped at an intersection for what seemed to the officers an unusually long time. The officers made a U-turn in their car at which time the truck turned right, without signaling, and sped off at an "unreasonable" speed. After pulling alongside the truck at a traffic light, an officer approached the truck to warn the driver concerning the traffic violation when he observed two large plastic bags containing what appeared to be crack cocaine. The occupants of the truck were arrested and charged with violating various federal drug laws.

The defendants in *Whren,* as does Hollins, argued that the officer's reason for approaching their truck was a pretext to search their truck; that is, that the officer was using the traffic violation as a justification to approach their truck to look for drugs. *Whren, supra,* at ——, 116 S.Ct. at 1772. The defendants contended that the standard to be applied should be "whether a police officer, acting reasonably, would have made the stop for the reason given." *Id.* at ——, 116 S.Ct. at 1773.

■ The defendants' arguments were rejected by the Supreme Court. "Not only have we never held, outside the context of inventory search or administrative inspection

---

2. The evidence is uncontroverted due to the procedure and timing of the trial court's ruling on the suppression motion. At the close of the State's evidence, the trial court advised defense counsel that enough evidence was heard to make a decision and asked defense counsel if he had any additional evidence. The following colloquy between the court and defense counsel took place:

DEFENSE COUNSEL: Well, I guess if I knew what your decision was, Your Honor, I would say that I would have a better response ...

THE COURT: Well, my decision is that there was insufficient probable cause or even insufficient reasonable suspicion to stop the car.

DEFENSE COUNSEL: In which case, I probably don't have any more evidence, Your Honor.

This highly irregular procedure resulted in a waiver by the defense of the opportunity to present evidence at the suppression hearing and in the uncontroverted fact that Hollins committed a traffic violation.

3. Responding to a question from the State, the trial court stated "I have no reason to disbelieve there wasn't a traffic violation; so I'm saying yes, there probably was [a traffic violation]."

4. The issue, as phrased by the Court, was "whether the temporary detention of a motorist who the police have probable cause to believe has committed a civil traffic violation is inconsistent with the Fourth Amendment's prohibition against unreasonable seizures unless a reasonable officer would have been motivated to stop the car by a desire to enforce the traffic laws." *Whren, supra,* at ——————, 116 S.Ct. at 1771–72.

..., that an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment; but we have repeatedly held and asserted the contrary." *Id.* at ——, 116 S.Ct. at 1774. Accordingly, "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Id.* Thus, a police officer's subjective motives are irrelevant in Fourth Amendment analysis, and a stop will be valid provided there is an objectively justifiable reason for it. If there is an objectively justifiable reason for the stop, then the stop is valid whether or not the police officer would have otherwise made the stop but for ulterior suspicions or motives. *Id.; see also Fair v. State,* 627 N.E.2d 427, 436 n. 7 (Ind.1993); *Banks v. State,* 578 N.E.2d 667 (Ind.1991) (traffic stop on second day of surveillance for drug trafficking was lawful); *State v. Heuck,* 577 N.E.2d 608, 611 (Ind.Ct.App.1991), *reh. denied, trans. denied* ("officer's subjective reasons for stopping a defendant are irrelevant where the officers have sufficient information to believe the defendant has violated the law") (citations omitted).

Turning to the facts of this case, we conclude the actions of Officers Brinkman and Bush, in pulling over Hollins for failing to signal a right-hand turn, comported with the Fourth Amendment of the United States Constitution. The fact that these officers' primary motivation may have been to investigate Hollins for suspicion of drug trafficking does not convert an otherwise valid traffic stop into an unconstitutional search and seizure. *Whren, supra,* at ——, 116 S.Ct. at 1774; *Heuck, supra,* at 611.

■ Given the stop of Hollins' vehicle was proper, it remains to be determined whether the subsequent discovery of the powder cocaine in the bag and the opening of the film canister complied with Fourth Amendment requirements. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...." Searches and

seizures conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specific and well delineated exceptions. *Minnesota v. Dickerson,* 508 U.S. 366, 372, 113 S.Ct. 2130, 2135, 124 L.Ed.2d 334 (1993). However, under the plain view doctrine, there is no warrant requirement since no "search" is involved in viewing an item left out in the open.

> The rationale of the plain view doctrine is that if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no 'search' within the meaning of the Fourth Amendment—or at least no search independent of the initial intrusion that gave the officers their vantage point.

*Id.* at 375, 113 S. Ct. at 2137; *see also Avant v. State,* 528 N.E.2d 74, 76 (Ind.1988) ("That which is in plain view is not the product of a search.") (citations omitted). To justify a warrantless seizure under the plain view doctrine, the officer must be lawfully located in a place from which the item can be plainly seen, the item's incriminating character must be immediately apparent, and the officer must have a lawful right of access to the item. *Horton v. California,* 496 U.S. 128, 137, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112 (1990); *Taylor v. State,* 659 N.E.2d 535, 538 (Ind.1995).

■ As discussed above, since the stop of Hollins' vehicle was proper, Officer Brinkman was clearly in a place he was entitled to be as he approached the passenger side of Hollins' car. Once next to the car, Officer Brinkman could look inside the vehicle and observe anything in plain view without his actions constituting a search. *See Colorado v. Bannister,* 449 U.S. 1, 101 S.Ct. 42, 66 L.Ed.2d 1 (1980); *Avant, supra,* at 76 ("Once an officer properly stops a vehicle, merely looking through the vehicle to see that which is inside is not a search.") In this case, Officer Brinkman shined his flashlight[5] into

---

5. We note that use of a flashlight does not transform what would have been a plain view observation during the daytime into an unconstitutional invasion of privacy due to sunset. *Avant,*

*supra,* at 76; *State v. Kitt,* 577 N.E.2d 972 (Ind. Ct.App.1991) (use of flashlight to observe marijuana cigarette on floorboard).

Hollins' car and observed a plastic bag wedged in the crack of the seat containing a white powder which he believed to be cocaine. Thus, the bag was in plain view and the requirement that the item's incriminating character be apparent was also satisfied. Finally, the inherent mobility of automobiles provided Officer Brinkman with the exigent circumstance justifying entry into Hollins' vehicle and seizure of the bag, thereby satisfying the lawful right of access requirement. *See, Horton, supra,* at 137 n.7, 110 S.Ct. at 2308 n. 7; *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Accordingly, the observation and seizure of the bag containing cocaine satisfied the requirements of the Fourth Amendment.

■ At this point in their encounter with Hollins, the officers had probable cause to place him under arrest for possession of cocaine. *Whren, supra,* at ——, 116 S.Ct. at 1772; *Warr v. State,* 580 N.E.2d 265 (Ind.Ct. App.1991). Also at this point, a film canister "popped up" from within the crack of the seat when Officer Brinkman removed the bag. Since the officers now had probable cause to arrest Hollins,[6] they were permitted to search the entire passenger compartment of Hollins' vehicle including opening any containers found therein. *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981); *Woods v. State,* 640 N.E.2d 1089, 1091 (Ind.Ct.App.1994). Thus, we conclude the search of the film canister and the subsequent discovery of the rock cocaine was a constitutional search and seizure incident to a lawful arrest.

Hollins argues that *Green v. State,* 647 N.E.2d 694 (Ind.Ct.App.1995), *trans. denied,* requires affirming the trial court's decision. Hollins contends that it was practicable for Officers Brinkman and Banks to get a war-

rant under the circumstances and their failure to do so mandates suppressing the cocaine found in his automobile.[7] We disagree.

In *Green,* the police received a tip from a reliable informant that Green would be traveling to Texas to pick up cocaine and then returning with the cocaine concealed in WD–40 cans and film canisters. The police, estimating Green's return from Texas would require two days travel, set up an appropriate surveillance. Green was eventually pulled over, his car searched and cocaine discovered, all without a warrant.

The Court of Appeals reversed Green's conviction finding the police had ample opportunity to secure a search warrant. The court noted that the police had Green under surveillance for some time, received advance tips from reliable informants, knew where and how Green would be traveling, and had two days in order to secure a search warrant in anticipation of Green's return trip. *Id.* at 696. Since, under those facts, it was practicable to obtain a warrant, the court concluded that conducting a search without a warrant was "unreasonable" and suppressed the evidence. *Id.*

We conclude the facts concerning the search of Hollins' car markedly differ from those in *Green.* First is the relative time of surveillance. Surveillance of Green began on September 25, 1993 and continued until October 6, 1993; Hollins was observed leaving a residence under surveillance twice in one evening and subsequently tailed for one block in his car. Second, the police received advance tips from reliable informants in *Green* which are not present in this case. Third, the police in *Green* had advance warning of Green's travel plans and route such that they could have interrupted their surveillance, obtained a warrant and later re-established

---

**6.** The fact that Hollins was not formally arrested until after the film canister was opened does not invalidate the search of this canister as incident to his arrest. *Rawlings v. Kentucky,* 448 U.S. 98, 111, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633 (1980); *Jackson v. State,* 588 N.E.2d 588, 590 (Ind.Ct.App.1992) (failure to formally arrest does not invalidate search of automobile where there is probable cause to make an arrest).

**7.** This line of argument is only applicable to the search of the film canister since, as discussed above, there was no "search" concerning the plastic bag as it was in plain view. In addition, there was no other "search" of Hollins' automobile other than opening the canister.

contact with a proper search warrant.[8] In this case, the police had no information as to Hollins' destination, preventing them from abandoning surveillance to obtain a warrant. Fourth, the police in *Green* had two days to secure a search warrant in anticipation of Green's return, whereas no similar opportunity presented itself in this case. Finally, and most importantly, the search in *Green* was not incident to a valid arrest as was the opening of the film canister found in Hollins' car. True, it may have been actually possible for the police to confiscate the canister, take it to a judge and then seek a search warrant to open it. However, we do not believe such a cumbersome procedure is constitutionally mandated under the facts of this case. We agree with the United States Supreme Court in *Acevedo* where, contemplating a similar procedure, the Court stated "the time and expense of the warrant process would be misdirected if the police could search every cubic inch of an automobile until they discovered a [film canister], at which point the Fourth Amendment required them to take the [canister] to a [judge] for permission to look inside." *California v. Acevedo*, 500 U.S. 565, 574, 111 S.Ct. 1982, 1988, 114 L.Ed.2d 619 (1991) (summarizing *Ross, supra* ).

In accordance with the foregoing, we reverse the grant of Hollins' motion to suppress and remand to the trial court for further proceedings not inconsistent with this opinion.

Reversed and remanded.

SHARPNACK, C.J., and GARRARD, J., concur.

---

**8.** In fact, this was the precise procedure used by the police in *Green,* albeit absent a valid search warrant.