Martino L. **PERKINS**, Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–9711–CR–792.

Court of Appeals of Indiana.

May 28, 1998.

---

Andrew C. Maternowski, Indianapolis, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Kimberly MacDonald, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

STATON, Judge.

Martino L. Perkins appeals from his convictions for carrying a handgun without a license, a class A misdemeanor,[1] and possession of marijuana, also a class A misdemeanor.[2] Perkins contends that the evidence supporting his convictions was obtained as the result of an unconstitutional search.

We affirm in part and reverse in part.

On September 25, 1996, Officers Highsmith, Buchman and others executed a search warrant in Marion County. Perkins was standing on the porch of the residence to be searched when the police approached. Officers Highsmith and Buchman saw Perkins reach behind his back and believed Perkins was either reaching for something or concealing something. The officers ordered Perkins to lie down two or three times, but Perkins would not comply. Eventually, the officers pushed Perkins to the floor, handcuffed him and then entered the house.

Officer Buchman remained on the porch while other officers secured the house. After the house was secure, Buchman performed a pat-down search of Perkins and found a loaded handgun tucked in Perkins' waistband behind his back. Perkins stated that he did not have a permit for the gun. Perkins was escorted into the house, read his *Miranda* rights and then asked where he lived. Perkins stated that he lived at a different residence. Perkins was eventually placed under arrest. At some point, the police also discovered marijuana in Perkins' jacket pocket.

First, the parties disagree as to whether the pat-down of Perkins was permissible under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). When evaluating determinations of reasonable suspicion, we accept the factual findings of the trial court unless they are clearly erroneous. *Ornelas v. United States,* 517 U.S. 690, 698–700, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996). Findings of fact are clearly erroneous when the record lacks any facts or reasonable inferences to support them. *State v. Hollins,* 672 N.E.2d 427, 430 (Ind.Ct.App. 1996), *trans. denied.* When determining whether the findings are clearly erroneous, we consider only the evidence most favorable to the judgment and the reasonable inferences flowing from that evidence. *Id.* We will not judge witness credibility or reweigh the evidence. *Id.* However, the ultimate determination of reasonable suspicion is reviewed *de novo. Ornelas,* 517 U.S. at 698–700, 116 S.Ct. at 1663.

The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...." Searches conducted outside the judicial process, without prior approval by a judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specific and well delineated exceptions. *Minnesota v. Dickerson,* 508 U.S. 366, 371–73, 113 S.Ct. 2130, 2135, 124 L.Ed.2d 334 (1993). One recognized exception is where a police officer detains a person for investigative purposes. *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 1884–85, 20 L.Ed.2d 889 (1968). During such a detention, the police may conduct a limited frisk of an individual in certain circumstances.

[T]here must be narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous indi-

---

1. IND.CODE §§ 35–47–2–1 (1993) & 35–47–2–23 (Supp.1996).

2. IND CODE § 35–48–4–11 (1993).

vidual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experiences.

*Id.* at 27, 88 S.Ct. at 1883 (citations omitted).

■ We conclude Officer Buchman acted reasonably and within the restraints of *Terry* when he frisked Perkins before escorting him inside the house. As previously pointed out, when the officers approached the residence and identified themselves as police, they observed Perkins place his hands behind his back. Officer Highsmith testified that he believed Perkins might be reaching for a weapon. Officer Buchman, who conducted the frisk, testified that he thought Perkins was reaching for something or attempting to hide something. Too, the officers' apprehension was heightened when Perkins refused to comply when he was ordered to lie down and had to be forcibly pushed to the ground. Officer Buchman stated that, under the circumstances, he decided to frisk Perkins for the officers' safety. We conclude that Perkins' actions on the porch were sufficient to justify the officers' concerns for their safety and the *Terry* frisk. *See Jackson v. State,* 669 N.E.2d 744, 748 (Ind.Ct.App.1996) (refusal to comply with police orders accompanied by suspicious hand movements and looks warranted frisk).

■ Next, Perkins contends that the subsequent search which discovered the marijuana was unconstitutional since it was performed prior to the existence of probable cause to arrest Perkins for carrying a handgun without a license.[3] It is not a violation of IC 35–47–2–1 to carry an unlicensed handgun on one's own property. Perkins argues

that the marijuana was discovered prior to the existence of probable cause to arrest him for violating IC 35–47–2–1. This is true because the police did not learn that he lived elsewhere than where the warrant was being served until after the search revealing the marijuana.

We were unable to locate in the record any clear testimony from the arresting officers or other evidence which would indicate precisely when the marijuana was discovered. The officers did testify that after Perkins was escorted inside the house he was read his *Miranda* rights and then asked where he lived. Perkins responded that he did not live in the house subject to the search warrant. Nevertheless, the record is entirely unclear as to whether the marijuana was discovered before or after the police ascertained Perkins' address. The police may search a person incident to a valid arrest. *Sears v. State,* 668 N.E.2d 662, 666 (Ind.1996). However, "[a]s with many search cases and probable cause issues, the timing of events and the officer's knowledge are critical in determining the validity of the search." *Id.* Since it was the State's burden to justify the warrantless search, *Hawkins v. State,* 626 N.E.2d 436 (Ind.1993), and the record is not clear as to whether the search was before or after Perkins provided information justifying his arrest for violating IC 35–47–2–1, we must reverse the trial court and suppress the marijuana.

Affirmed in part and reversed in part.

RUCKER and FRIEDLANDER, JJ., concur.

---

3. The marijuana was not discovered during the initial frisk of Perkins.