Jermaine L. SMITH, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–9809–CR–767.

Court of Appeals of Indiana.

June 28, 1999.

Transfer Denied Aug. 31, 1999.

---

Stephen Gerald Gray, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Barbara Gasper Hines, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Appellant–Defendant, Jermaine L. Smith, appeals his conviction of theft,[1] a Class D felony, for using a "cloned" cellular telephone reprogrammed to have an internal electronic serial number ("ESN") different than its external ESN. Put in the vernacular, Smith was convicted of using an illegal cellular phone which had been modified such that, when in use, the charges would be billed to someone else's active cellular phone number.

---

1.  *See* IC 35–43–4–2.

Smith raises the following restated issue[2] for our consideration:

> Whether the evidence gained by state troopers' field-test of the cellular phone to determine whether that phone was cloned was the product of an unreasonable search and seizure and therefore inadmissible.

We reverse.

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to the conviction establish that on February 19, 1998, at approximately 7:15 p.m., Indiana State Police Sergeant David Henson pulled over a blue and white Oldsmobile driven by Steve Martin, in which Smith was a front seat passenger. Trooper Henson initiated the traffic stop because a computer check on the vehicle's license plate revealed the plate was registered to a yellow Oldsmobile rather than a blue and white one. Trooper Henson approached the vehicle and asked Martin for his license and registration. Following the arrival of Troopers Troy Sunier and Patrick Spellman, Martin and Smith were asked to exit the vehicle, separated, and questioned in an effort to determine if the car was stolen. The troopers' inquiries revealed that the car belonged to Smith, who had painted it a different color, which explained the apparently mismatched license plate.

During the course of this investigatory stop, Trooper Dean Wildauer arrived on the scene and asked Smith if he and Trooper Spellman could search the vehicle for guns, drugs, money, or illegal contraband.[3] Smith consented to the search. While no guns, drugs, money, or illegal contraband were recovered as a result of the search, two cellular flip phones were retrieved from the front seat of Smith's car. One phone was found on the passenger's side of the vehicle where Smith had been sitting, and the other was found on the driver's side where Martin had been sitting. When asked whether the cellular phone found on the passenger's side was his, Smith stated that it was his girlfriend's; however, he could not recall the name of her service provider.

Trooper Wildauer then took both phones back to his police vehicle where he removed the batteries and performed a short-out technique on each device. The results of this field-test revealed that the cellular phones' internal ESNs did not match the external ESNs, indicating that the cellular phones had been illegally cloned, or reprogrammed such that, when in use, the charges would be billed to someone else's phone number. After discovering that the phones were cloned, Trooper Wildauer called a law enforcement hotline which informed him that the internal ESN of the cellular phone Smith claimed was his girlfriend's in fact belonged to GTE Mobilnet and was assigned to one of its legitimate service customers, Technology Marketing Corporation. Upon further questioning, Smith admitted that he had purchased the cloned phone on the street from an acquaintance and that he knew it was a clone. Thereafter, Smith agreed to cooperate with the police investigation, his car was impounded, and he and Martin were released.

The State filed its information against Smith on February 24, 1998, charging him with theft, a Class D felony. At a hearing held April 30, 1998, Smith moved to suppress the incriminating statements he had made to the officers at the scene and the cellular phone that was seized. The trial court ruled that Smith's statements would be suppressed, but that the phone was admissible.[4]

---

2. Smith also contends that the State should have charged him with possession or use of an unlawful telecommunications device, a Class A misdemeanor, rather than theft, a Class D felony. *See* IC 35-45-13-7. Because the search and seizure issue is dispositive, we do not reach this issue.

3. Smith's car matched the description of a vehicle known by Trooper Wildauer to be involved in gang activity. One of the alleged gang members whom Trooper Wildauer had been tracking as part of an ongoing criminal investigation apparently had the same name as Smith. However, it

was later determined that neither Smith nor his car had any affiliation with the gang Trooper Wildauer was investigating.

4. The trial court stated prior to trial that "[t]he phones were properly seized, the statements are suppressed." *Record* at 23. Throughout its brief, the State refers to and relies upon Smith's incriminating statements without clarification that such statements were suppressed and therefore are not properly of record before us.

At the bench trial on July 2, 1998, the trial court incorporated by reference the evidence received at the suppression hearing and deemed admissible. *Record* at 22. Smith stipulated that the internal ESN of the cloned cellular phone was not legally assigned to him, and further stipulated that no GTE Mobilnet ESN was assigned to him. In addition, copies of phone records containing many calls made during and around the time Smith was apprehended with the cloned cellular phone, which a Technology Marketing Corporation employee confirmed she had not made, were entered into evidence. As a result, GTE Mobilnet sustained a loss for the phone calls that were billed to Technology Marketing Corporation but did not originate from its phone. Thereafter, the trial court entered a judgment of conviction against Smith for the crime of theft and sentenced him accordingly. Smith now appeals.

### DISCUSSION AND DECISION

■ Smith contends that the troopers engaged in an unreasonable search and seizure by detaining him, disassembling a cellular phone, and accessing its computer memory, all without reasonable suspicion or consent. In so doing, Smith invokes both the Fourth Amendment to the United States Constitution and Article One, Section Eleven of the Indiana Constitution. Because he raises the state constitutional arguments for the first time on appeal and only then in passing, we find that he has waived those arguments, and thus confine our discussion to whether there was a violation of his federally protected rights. *See Coleman v. State*, 558 N.E.2d 1059, 1067 (Ind.1990).

■ Initially, we observe that Sergeant Henson's investigatory stop of Smith's vehicle was valid and supported by reasonable suspicion. Police officers may stop a vehicle when they observe minor traffic violations. *State v. Hollins*, 672 N.E.2d 427, 431 (Ind.Ct. App.1996) (citing *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996); *Small v. State*, 632 N.E.2d 779, 782 (Ind.Ct.App.1994), *trans. denied*), *trans. denied.* Indeed, because of the limited nature of the intrusion, brief investigative detentions may be justified on less

than probable cause. *Jones v. State*, 655 N.E.2d 49, 55 (Ind.1995) (citing *United States v. Brignoni–Ponce*, 422 U.S. 873, 880, 95 S.Ct. 2574, 2579–80, 45 L.Ed.2d 607 (1975)). Moreover, a police officer's subjective motives in initiating an investigatory stop are irrelevant in Fourth Amendment analysis. "[A] stop will be valid provided there is an objectively justifiable reason for it. If there is an objectively justifiable reason for the stop, then the stop is valid whether or not the police officer would have otherwise made the stop but for ulterior suspicions or motives." *State v. Voit*, 679 N.E.2d 1360, 1362 (Ind.Ct.App.1997) (citing *Hollins*, 672 N.E.2d at 430–31). Here, the evidence was uncontroverted that the license plate on Smith's blue and white car was registered to a yellow car. Upon conducting a computer check, Sergeant Henson had reasonable suspicion to believe that Smith's vehicle had a mismatched plate, and as such, could be stolen or retagged. Sergeant Henson's traffic stop was valid and comported with the mandates of the Fourth Amendment.

■ Smith claims that the troopers' subsequent search of his car for guns, drugs, money, or illegal contraband was illegal because his consent to a full search was not freely or voluntarily given. Searches and seizures conducted without prior approval by a judge or magistrate and outside the judicial process are *per se* unreasonable under the Fourth Amendment, subject only to a few specific and well delineated exceptions. *Hollins*, 672 N.E.2d at 431 (citing *Minnesota v. Dickerson*, 508 U.S. 366, 372, 113 S.Ct. 2130, 2135, 124 L.Ed.2d 334 (1993)). One such exception occurs when consent is given to the search, under the theory that "when an individual gives permission to a search of either his person or property, governmental intrusion thereon is presumably not unreasonable." *Jones*, 655 N.E.2d at 54. We have previously set forth our standard on the voluntariness of a consent to search in *Thurman v. State*, 602 N.E.2d 548, 552 (Ind.Ct. App.1992), *trans. denied:*

> " 'When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and volun-

tarily given.' *Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968); *see also Snyder v. State,* 538 N.E.2d 961, 964 (Ind.Ct.App. 1989), *trans. denied.* The voluntariness of a consent to search is a question of fact to be determined from the totality of the circumstances. *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 2047–48, 36 L.Ed.2d 854 (1973); *Martin v. State,* 490 N.E.2d 309, 313 (Ind.1986). A consent to search is valid except where it is procured by fraud, duress, fear, intimidation, or where it is merely a submission to the supremacy of the law. *Phillips v. State,* 492 N.E.2d 10, 18 (Ind.1986) (overruled on other grounds)."

There are no such indicators here that Smith's consent was in any way induced by fraud, fear, or intimidation. Although the number of officers was unusually high for a traffic stop, none of the officers touched Smith or physically restrained his freedom of movement before the moment he consented to the search of his car. *See Cooley v. State,* 682 N.E.2d 1277, 1279 (Ind.1997) (defendant's consent to search vehicle was valid where he was not in custody and neither handcuffed nor confined); *Jones,* 655 N.E.2d at 56 (defendant's consent to search vehicle was voluntary even in light of "unusually high" presence of three officers where defendant was not touched or physically restrained). No weapons were drawn and Smith was allowed to move freely about the scene. Under the totality of these circumstances, we conclude that Smith's consent to search his vehicle was voluntarily given.

■■■■ Having held that Smith's consent to search was not constitutionally defective, we must then determine whether the troopers exceeded the scope of his consent. Because it comes within an established exception to the Fourth Amendment warrant requirement, the scope of the authority to search is strictly limited to the consent given, and a consensual search is reasonable only if it is kept within the bounds of that consent. *Covelli v. State,* 579 N.E.2d 466, 472 (Ind.Ct.App.1991) (citing *United States v. Dichiarinte,* 445 F.2d 126, 129–30 (7th Cir.1971)), *trans. denied.* "The Fourth

Amendment is satisfied when, under the circumstances, it is objectively reasonable for the officer to believe that the scope of the suspect's consent permitted him to open a particular container within the automobile." *Florida v. Jimeno,* 500 U.S. 248, 249, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297 (1991). The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness, in other words, "what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Id.,* 500 U.S. at 251, 111 S.Ct. at 1803–04. In addition, the scope of a consensual search is generally defined by its expressed object. *Id.*

Here, the expressed objects of the troopers' search were guns, drugs, money, or illegal contraband. When Smith gave the troopers permission to search his car for guns, drugs, money, or illegal contraband, a reasonable person would have understood Smith's consent to include permission to search any containers inside the vehicle which might reasonably contain those specified items. *See id.* (consent to search vehicle for drugs would include consent to search containers within vehicle which might contain drugs, with no additional consent required to search closed containers within the vehicle); *see also United States v. Maldonado,* 38 F.3d 936, 940 (7th Cir.1994) (when permission to search luggage for illegal drugs is given, a reasonable person would have understood defendant's consent for the search of his luggage to include permission to search any items inside luggage which might contain drugs). A cellular phone is a container capable of hiding such items as drugs or money. Therefore, it was proper for the troopers to seize the cellular phone long enough to determine whether it was truly an operating cellular phone or merely a pretense for hiding the expressed objects of their search.

■■■ While we conclude that the seizure of the cellular phone itself was valid in this limited respect, any further action in accessing the computer memory of the phone to retrieve its electronic contents was invalid and exceeded the scope of Smith's consent to search. The courts have long recognized

that information, i.e., intangible items, may be seized within the meaning of the Fourth Amendment. *See Berger v. New York,* 388 U.S. 41, 59–60, 87 S.Ct. 1873, 1884, 18 L.Ed.2d 1040 (1967) (tape recording conversations); *United States v. Carey,* 172 F.3d 1268, 1999 WL 215669 (10th Cir. April 14, 1999) (to be reported at 172 F.3d 1268) (accessing and reading closed computer files); *United States v. Turner,* 169 F.3d 84, 87 (1st Cir.1999) (same); *United States v. Meriwether,* 917 F.2d 955, 958 (6th Cir.1990) (retrieving telephone numbers from an electronic display pager); *United States v. Marbury,* 732 F.2d 390, 399–400 (5th Cir.1984) (noting identification numbers from items of equipment); *Dichiarinte,* 445 F.2d at 130–31 (opening and reading tax returns); *United States v. David,* 756 F.Supp. 1385, 1389 (D.Nev.1991) (retrieving contents of computer memo book). Likewise, we conclude that the Fourth Amendment affords protection from the unreasonable search and seizure of the computer memory of a cellular phone to retrieve its electronic contents.

■ Here, the troopers had Smith's permission to search his vehicle and the containers contained therein which might reasonably contain the expressed items of the search: guns, drugs, money, or illegal contraband. However, Smith's consent did not authorize the troopers to access the computer memory of his cellular phone—an objectively reasonable person assessing in context Smith's verbal exchange with the troopers would have understood that the troopers intended to search only in places where Smith could have disposed of or hidden the specific items which they were looking for, namely, guns, drugs, money or other contraband. No objective person would believe that by performing a short-out technique on a cellular phone to retrieve its electronic contents, the troopers might reasonably find the expressed object of their search. "Government agents may not obtain consent to search on the representation that they intend to look only for certain specified items and subsequently use that consent as a license to conduct a general exploratory search." *Dichiarinte,* 445 F.2d at 129. As the Seventh Circuit has observed, "if government agents obtain consent or a warrant to search for a stolen television set, they must limit their activity to that which is necessary to search for such an item; they may not rummage through private documents and personal papers." *Id.* at n. 3. Thus, where the troopers here obtained consent to search Smith's car for guns, drugs, money, or contraband, they had to limit their activity to that which was necessary to search for such items. Accessing the computer memory of the cellular phone to retrieve its electronic contents was not within the scope of Smith's consent to search.

■ Nor do we find that Smith failed to object when the troopers exceeded the scope of his consent to search. *See Maldonado,* 38 F.3d at 940 (a suspect's failure to object can indicate consent); *United States v. Patterson,* 97 F.3d 192, 195 (7th Cir.1996) (if suspect had intended to limit scope of his consent in any manner, burden was upon him to do so). The Record reflects that Trooper Wildauer took the cellular phones back to his car while Trooper Spellman continued to search Smith's car for guns, drugs, money or contraband. While in the confines of his police vehicle, Trooper Wildauer performed the short-out technique and retrieved the electronic contents of the cellular phone. It was not until he returned to Smith's car that he advised Smith that he had accessed the computer memory of the phone and determined it was cloned. Under these circumstances, Smith had no way of knowing what Trooper Wildauer was doing inside his police vehicle and thus, had no reasonable opportunity to object when Trooper Wildauer exceeded the scope of Smith's consent to search. *See Turner,* 169 F.3d at 89 (defendant had no meaningful opportunity to object before search of his computer files was completed, where he was not present and unaware of the search).[5]

---

5. We note that the Record does contain a single but clouded reference to the troopers' seeking additional consent to search the electronic contents of the cellular phone. Specifically, we refer to the following colloquy between defense counsel and Trooper Wildauer at the suppression hearing:

"Q: What did you ask them?
A: Are these your phones?
Q: What did they say?

■ The State alternatively relies on the plain view doctrine in order to validate its warrantless search and seizure of the electronic contents of the cellular phone. However, the plain view doctrine requires that law enforcement officials have probable cause to believe the evidence will prove useful in solving a crime. *Taylor v. State,* 659 N.E.2d 535, 538 (Ind.1995). In other words, the criminal nature of the evidence must be "immediately apparent," such that a person of reasonable caution would believe the items could be useful as evidence of a crime. *Id.; see also Dichiarinte,* 445 F.2d at 130 (defendant's tax returns were not in plain view but had to be opened and read, their criminal character was not apparent on a mere surface inspection, and defendant's limited consent did not authorize the agents' opening and reading them); *Stanley v. Georgia,* 394 U.S. 557, 571, 89 S.Ct. 1243, 1251, 22 L.Ed.2d 542 (1969) (moving picture film found in desk drawer was not contraband, criminal activity, or criminal evidence in plain view, and officers could not put up a projector and examine the film in the hope that it would give some evidence of previously unsuspected criminal behavior). Given the widespread use of cellular phones today, the mere possession of one does not provide the basis for probable cause or even reasonable suspicion to believe the possessor has committed or may have committed a crime. "To conclude otherwise would be to ignore the ubiquity of cellular phones in our society." *United States v. Romy,* 1997 WL 1048901 (E.D.N.Y. April 24, 1997). As such, we reject the State's position on this point.

■ In view of the State's failure to justify the warrantless search and seizure of the electronic contents of the cellular phone, Smith's motion to suppress should have been granted, and neither the cellular phones nor the evidence flowing from their search and seizure should have been admitted into evidence. "In a trial in a state court, evidence which was discovered during a search prohibited by the Fourth Amendment is inadmissible." *Pirtle v. State,* 263 Ind. 16, 29, 323 N.E.2d 634, 640 (1975) (citing *Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961)).

■ Having found constitutional error, our inquiry turns to whether that error was prejudicial to the defendant. *Stinchfield v. State,* 174 Ind.App. 423, 432, 367 N.E.2d 1150, 1155 (1977). A Fourth Amendment error such as one which occurred in the instant case is subject to a constitutional harmless error analysis. *Esquerdo v. State,* 640 N.E.2d 1023, 1030 (Ind.1994) (citing

A: Ah ... one of them stated that it was his girlfriends. Trooper Spellman ...
Q: Okay.
A: Did more of that (inaudible) conversation.
Q: Okay. What did Mr. Smith say?
A: Ah ... I don't recall.
Q: Okay you don't recall what he said?
A: (inaudible)
Q: And ah ... what else did you ask him?
A: Um ... who they had service through.
Q: Okay you wanted to know who their provider was?
A: Yes.
Q: And did Mr. Smith say?
A: I don't recall.
Q: And then what did you ask him?
A: Ah ... Trooper Spellman was asking the majority of these questions with me.
Q: I'm asking only what you asked, I'm only asking what you asked.
A: Okay. *Um ... mind if I take a look at your phones, if you don't mind?*
Q: Okay. So then you wanted to look at the phones?
A: Yeah. We had already received consent on the car.
Q: Okay.

A: Already been in the car.
Q: Right.
A: Ah ... found the phones.
Q: Okay.
A: I believe both were trying to deny the ownership at the start of the phones.
Q: Um hum.
A: Um ... got consent or not got consent located the phones.
Q: Um hum.
A: I then determined they were burnout phones, clone phones."
*Record* at 142–44 (emphasis added). Nowhere else in the Record, either in the other troopers' testimony at the suppression hearing or at trial, is there mention that permission was requested of Smith to search the cellular phone, or that such permission was granted. In his testimony at trial, Trooper Wildauer did not indicate whether he received consent to search the phone. As such, the Record is insufficient to support any contention that Smith consented to the search of the electronic contents of the cellular phone seized from his vehicle. The burden of proof was on the State to establish consent, and it failed to meet that burden.

*Hawkins v. State,* 626 N.E.2d 436, 440 (Ind. 1993)). Only where we can state beyond a reasonable doubt that the improperly admitted evidence did not contribute to the defendant's conviction is the error harmless. *Id.* (citing *Rabadi v. State,* 541 N.E.2d 271, 276 (Ind.1989)). Here, in the absence of proof that the cellular phone's internal ESN did not match the external ESN, there was no evidence that Smith possessed or used an illegally cloned phone capable of exerting unauthorized control over another customer's ESN. Given the electronic contents of the cellular phone were essential to the case against Smith, we cannot say that its erroneous introduction at trial was harmless beyond a reasonable doubt.

Reversed.

GARRARD, J., and NAJAM, J., concur.