James Michael WILKINSON,
Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 29A02–0004–CR–228.

Court of Appeals of Indiana.

March 15, 2001.

Andrew M. Barker, Noblesville, IN, Attorney for Appellant.

Karen Freeman–Wilson, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATTINGLY, Judge.

James Michael Wilkinson appeals his conviction after a jury trial of driving while suspended for life as an habitual traffic violator. He raises four issues on appeal, which we restate as:

1. Whether the trial court properly admitted evidence obtained pursuant to a police officer's random computer check of the license plate numbers of cars parked at a convenience store;

2. Whether the prosecutor improperly prejudiced the jury by listing in opening

argument the prior convictions necessary to support a lifetime license suspension;

3. Whether Wilkinson was properly notified that his driving privileges had been suspended for life; and

4. Whether Wilkinson's trial counsel was ineffective for failing object to certain evidence or to renew certain objections.

We affirm.[1]

## FACTS

A Fishers police officer saw Wilkinson's truck pull into a convenience store parking lot late one afternoon. The officer testified that he had an in-car computer that could run checks of license plate numbers, driver's license numbers, vehicle identification numbers, and other information. The officer typically ran license plate numbers at random throughout his shift. He had no particular reason to run the check of Wilkinson's license plate. The officer testified it was a standard procedure of the Fishers Police Department to run license plate checks at random.

The computer check revealed the truck was registered to Wilkinson and that Wilkinson was an habitual traffic violator (HTV). It also provided a physical description of Wilkinson. Wilkinson left the store, entered the truck, and drove away. The officer, after noting the driver fit Wilkinson's description, stopped Wilkinson and arrested him. The officer did not see Wilkinson commit a traffic violation.

## DISCUSSION AND DECISION

1. *Random License Plate Checks*

■■■ Wilkinson argues evidence obtained as a result of the police officer's random checks of license plate numbers should have been suppressed because it resulted from a random search carried out without any reasonable and articulable suspicion that Wilkinson might have violat-

ed the law. A trial court has broad discretion in ruling on the admissibility of evidence, and on review we will disturb a trial court's ruling only upon a showing of an abuse of discretion. *Sparkman v. State,* 722 N.E.2d 1259, 1262 (Ind.Ct.App.2000). In reviewing a motion to suppress, we do not reweigh the evidence, but determine if there is substantial evidence of probative value to support the trial court's ruling. *State v. Aynes,* 715 N.E.2d 945, 949 (Ind. Ct.App.1999), *reh'g denied.* We look to the totality of the circumstances and consider all uncontroverted evidence together with conflicting evidence that supports the trial court's decision. *Id.* Where the basis for the ruling on a motion to suppress is unclear, we will uphold the trial court if a reasonable view of the evidence supports the trial court's decision. *Willsey v. State,* 698 N.E.2d 784, 789 (Ind.1998). We will affirm the judgment of the trial court if it is sustainable on any legal grounds apparent in the record. *Alford v. State,* 699 N.E.2d 247, 250 (Ind.1998).

Wilkinson offers no authority in direct support of his position that the "search" in the form of the computer check of his license plate number was improper. Instead, he notes that the Indiana Constitution, in some circumstances, gives greater protections than does the Fourth Amendment to the United States Constitution because our courts employ a "reasonableness" analysis:

> [T]his court enunciated a separate and distinct method of analysis for claims of search and seizure violations of the state constitution. Rather than employ federal concepts like the warrant requirement and probable cause requirement, we require instead that the State bear the burden of showing that, in the totality of the circumstances, the intrusion was reasonable.

*Baldwin v. Reagan,* 715 N.E.2d 332, 337 (Ind.1999). Wilkinson asserts the com-

---

1. We heard oral argument at Indiana State University on January 10, 2001. We gratefully acknowledge the hospitality of the students, faculty, and administration of the University and the capable advocacy of the parties' counsel.

puter search of license plate numbers violates that standard because it allows "police officers to pick the targets of their investigations on their own without regard to observed violations of the law.... This unbridled discretion allows officers to determine the course of their investigation on the appearance of a vehicle, the appearance of a driver, or the location of a vehicle, all without articulable or reasonable suspicion." (Br. of the Appellant at 8.) He asserts the procedure could therefore lead to pretextual stops.

We share Wilkinson's concern that this procedure could lead to pretextual stops, and we question whether random checks of license plates in convenience store parking lots represent an efficient use of the limited resources of law enforcement agencies. Regardless, we must decline to hold the random license plate check was a "search."

Neither party directs us to Indiana authority directly addressing a random computer check of license plate numbers. However, we have held, without explicitly addressing whether the random check was a search, that a traffic stop was justified by a computer check indicating the plate was not on the car to which it was registered. *Smith v. State*, 713 N.E.2d 338 (Ind.Ct.App.1999), *trans. denied* 726 N.E.2d 303 (Ind.1999). The *Smith* decision did not indicate whether the officer had a reason for initiating the computer check, nor did it otherwise explain the circumstances surrounding the check. Instead, it addressed only the validity of the subsequent traffic stop:

> Upon conducting a computer check, [the officer] had reasonable suspicion to believe that Smith's vehicle had a mismatched license plate, and as such, could be stolen or retagged. [The officer's] traffic stop was valid and comported with the mandates of the Fourth Amendment.

*Id.* at 342.

Decisions from other states that have addressed this question appear to find consistently that a suspicionless check of license plate numbers is not an improper search. See, *e.g., People v. Brand,* 71 Ill.App.3d 698, 28 Ill.Dec. 83, 390 N.E.2d 65 (1979). Brand was driving twenty miles per hour in an area where the speed limit was forty-five. There was no posted minimum speed limit, and the officer did not see Brand committing a violation. The officer made a radio inquiry concerning the license plates and was told the plates were registered for a car the model year of which was unknown. The officer testified that was "unusual." *Id.* 71 Ill.App.3d 698, 28 Ill.Dec. 83, 390 N.E.2d at 66. The officer stopped Brand and found his license was suspended.

The court determined Brand was not subjected to an improper search:

> A search connotes prying into hidden places to observe items which are concealed; there is no search attendant to viewing an object which is open to view. In the present case, all the police officer did was view the defendant's car license plate, which was in plain sight; he then checked the registration of the plates to determine if it was proper. Since it is unlawful to operate a vehicle on the roadway without proper registration, the officer's conduct was not inappropriate in this regard.

*Id.* 71 Ill.App.3d 698, 28 Ill.Dec. 83, 390 N.E.2d at 67 (citations omitted). While the license plate check was not improper, the court went on to find the police improperly stopped Brand because Brand's reduced rate of speed did not provide reasonable suspicion Brand was violating any law. In the case before us, by contrast, the check revealed a clear violation of law and gave rise to more than just a suspicion that something was "unusual."

Similarly, in *State v. Donis,* 157 N.J. 44, 723 A.2d 35 (1998) the court determined a random computer check of the license plate numbers of passing cars was not a "search." The court reasoned that because license plate information was publicly displayed and a state statute authorized

use of vehicular license information for law enforcement purposes, drivers' privacy rights were not implicated and no articulable suspicion of criminal conduct was required. There, as here, the police stopped the driver based on the physical description, received via computer check, of the registered owner of the car. The stop was held valid and did not constitute an unreasonable seizure because the officer reasonably believed there was a "general match" between the appearance of the driver and the description received via the computer check. *Id.* at 41, 723 A.2d 35.

■ Like the officer in *Donis,* the officer in the case before us had reasonable suspicion to stop Wilkinson by virtue of the evidence obtained through the computer check indicating Wilkinson was driving the car. The computer check returned a description of Wilkinson that the officer characterized as "a physical description of what's on your driver's license, such as height, weight, hair and eye color." (R. at 163.) The officer testified that he had a clear view of the person who drove the truck away from the convenience store and that the driver of the car "closely matched the height and weight and hair color."[2] *Id.* at 164. A stop is valid if there is an objectively justifiable reason for it, "whether or not the police officer would have otherwise made the stop but for ulterior suspicions or motives." *Smith,* 713 N.E.2d at 342. The officer had information to the effect that Wilkinson, the driver to whom the truck was registered, presently had a suspended license.

2. We note that had the officer not obtained a physical description or other information indicating Wilkinson was the driver of the car, we would find the stop impermissible for the same reason as did the court in *People v. Brand. Cf. Smith,* where the violation was a license plate that did not match the car. There, our supreme court found the stop valid even though the officer apparently did not know who was driving the car. Here, by contrast, the violation did not involve irregularities in the registration or licensure of the vehicle, but of the driver.

Our courts have generally found that when there is evidence a crime has taken place, police may stop an individual who fits the description of the violator. *See, e.g., Samaniego v. State,* 553 N.E.2d 120 (Ind.1990). We cannot say the trial court abused its discretion in admitting evidence obtained pursuant to the stop of Wilkinson.

### 2. *Prosecutorial Misconduct*

■ Wilkinson asserts prosecutorial misconduct in the form of references by the State in its opening argument to Wilkinson's status as an Habitual Traffic Violator[3] when he was arrested. Wilkinson offers no authority to support the proposition that it is fundamental error for a prosecutor to refer, in a prosecution for driving while suspended as an habitual traffic violator, to the fact the defendant had been previously convicted of being an habitual traffic violator.

■ It is well established that explaining to the jury in opening argument what the evidence will show is not error. *See, e.g., Cox v. State,* 696 N.E.2d 853, 859 (Ind.1998). Wilkinson does not explain why the State would be precluded from revealing to the jury that evidence would be offered as to this element of the offense with which Wilkinson was charged. Accordingly, we cannot characterize as prosecutorial misconduct the State's references to Wilkinson's license suspension.

### 3. *Notification of Suspension*[4]

■ Wilkinson asserts the Bureau of Motor Vehicles (BMV) mailed a notice of

3. Wilkinson characterizes the prosecutor's acts as "detailing the convictions necessary to reach the level of a lifetime suspension" (Br. of the Appellant at 15) and "[t]he listing of the convictions," *id.* While the prosecutor did tell the jury Wilkinson had been adjudged an habitual traffic violator and had been convicted of driving while an habitual traffic violator, the record does not otherwise reveal a "listing" or "detailing" of Wilkinson's prior convictions that led to the lifetime suspension.

4. The State notes that this argument was not presented to the trial court and is accordingly

lifetime suspension to him at an address that was not current, apparently because the notice was sent to the address on his operator's license record and not his vehicle registration record. Wilkinson's argument on this issue appears to be that he was not properly notified of his *lifetime* suspension because the BMV did not follow the procedures required by statute when an HTV suspension of *ten years* is imposed. Under Ind.Code § 9–30–10–5, the ten year statute, the BMV must mail a notice of suspension to the violator's "last known address." Wilkinson acknowledges the statute under which he was convicted includes no such requirement for notification of lifetime suspensions, *see* Ind.Code § 9–30–10–17, but argues this court should require such notice because "without applying the same requirement to the lifetime suspension, individuals are denied their due process that is guaranteed under the ten (10) year suspension statutes." (Br. of the Appellant at 17.)

We have required as sufficient proof of a lifetime suspension only that a defendant "knew or should have known that his driving privileges were forfeited," *Austin v. State*, 700 N.E.2d 1191, 1192 (Ind.Ct.App. 1998), *trans. denied* 726 N.E.2d 308 (Ind. 1999). We recently addressed the knowledge requirement of Ind.Code § 9–30–10–17 in *Pierce v. State*, 737 N.E.2d 1211 (Ind.Ct.App.2000). There, Pierce argued there was insufficient evidence he knew of the prior conviction as an HTV that was the basis for his lifetime suspension. We explained the absence of an explicit "knowledge" requirement in that code section:

Presumably, this is because with a conviction, unlike with a BMV-generated suspension or adjudication, the defen-

dant is necessarily more directly involved. A defendant who has been convicted of being an habitual traffic offender and whose license has accordingly been suspended for life has almost certainly appeared in court, entered a plea of guilty or been convicted after a trial in which he participated, and been sentenced by the trial court to a lifetime suspension.

737 N.E.2d at 1214.

Wilkinson was convicted in 1988 after a guilty plea of operating a vehicle while an habitual traffic offender, and his sentence included a lifetime suspension (R. at 315). The trial court could have reasonably inferred from this evidence of Wilkinson's conviction and sentence that Wilkinson knew of his lifetime suspension, and we cannot say the trial court erred in its determination that this element of Wilkinson's offense was satisfied.

### 4. *Ineffective Assistance of Counsel*

Finally, Wilkinson asserts ineffective assistance of trial counsel in the form of counsel's failure to object to an insufficiently redacted driving record.[5]

 To prevail on a claim of ineffectiveness of counsel, an appellant must show he was denied a fair trial when the conviction resulted from a breakdown in the adversarial process which rendered the result unreliable. *Schiro v. State*, 533 N.E.2d 1201, 1205–06 (Ind.1989). The appellant must show that the identified acts or omissions of counsel were outside the wide range of professionally competent assistance consistent with the prevailing professional norms, and that there is a reasonable probability but for counsel's error the result of the proceedings would have been

---

waived. Wilkinson does not indicate in his brief or his reply brief that the argument was raised at trial. Notwithstanding the waiver, we find no error.

**5.** Wilkinson also asserts ineffective assistance by virtue of counsel's failure to renew an objection at trial. Wilkinson had moved to

suppress the evidence that flowed from the random license plate check and his motion was denied. When the evidence was offered at trial, counsel did not object. Because we hold that in these limited circumstances the random check and the subsequent stop were permissible, we cannot say counsel was ineffective for failure to renew the objection.

different. *Haggenjos v. State,* 493 N.E.2d 448, 451 (Ind.1986). The appellant must overcome a presumption that counsel has prepared and executed his client's defense effectively. *Schiro,* 533 N.E.2d at 1206. The reviewing court does not speculate on what might have been the most advantageous strategy, and isolated bad tactics or inexperience do not necessarily amount to ineffective assistance of counsel. *Id.*

■ The State offered into evidence two versions of Wilkinson's BMV record: a complete record, and a redacted one from which had been excluded any mention of the offenses that resulted in the finding Wilkinson was an HTV. The redacted record was passed to the jury. Wilkinson first asserts, without citation to authority, that he was prejudiced because the jury saw "the size and length of Exhibit 3, the un-redacted portions of Mr. Wilkinson's record ... the jury could impermissibly have relied upon the difference in size between Exhibits 3 and 4 to come to the conclusion that Mr. Wilkinson's criminal history was extensive...." (Br. of the Appellant at 13.)

Wilkinson's full record was only eight pages longer than the redacted record. Because the "pages that were redacted measure only a tiny fraction of an inch," (Br. of Appellee at 13), the jury presumably could not tell there was a substantial difference between the two exhibits. Wilkinson has not demonstrated the result of the trial would have been different had his counsel objected, and we therefore cannot say counsel was ineffective for failure to object to the redacted record.

■ Wilkinson further asserts that despite the redaction his record contained "prejudicial information which should not have been allowed to be viewed by the jury." (Br. of the Appellant at 13.) He points to an entry on the redacted record of "SUSP ID" under which appears the number "18." (R. at 273.) He contends "it is clear by the number under 'Susp ID' that Mr. Wilkinson had at least eighteen

prior traffic incidents, and the jury could infer that each one resulted in a suspension." (Br. of the Appellant at 13.) Nothing in the trial testimony indicated there was significance to the number "18," and it is not apparent that the title "SUSP ID" would indicate to the lay reader its meaning. Wilkinson has not shown he was prejudiced by the driving record entry, and counsel was not ineffective for failing to object to it.

Affirmed.

MATHIAS and ROBB, JJ., concur.