801 N.E.2d 689 (2004)
STATE of Indiana, Appellant,
v.
E.R., Appellee-Defendant.
No. 50A04-0305-CR-217.
Court of Appeals of Indiana.
January 16, 2004.
Transfer Denied March 11, 2004.
*690 Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.
Derek R. Jones, Jones Huff & Jones, Plymouth, IN, Attorney for Appellee.

OPINION
SULLIVAN, Judge.
Appellant, the State of Indiana, challenges the trial court's grant of Defendant E.R.'s motion to suppress.
We reverse and remand.
The parties agree as to the basic facts. On January 1, 2003, at approximately 12:45 p.m., Officer Robert DeLee of the Plymouth Police Department was on duty when he observed a red Dodge Stealth parked on the side of the street with someone in the driver's seat. Officer DeLee took note of the vehicle's license plate number and ran a random license plate check on the number. The results of the inquiry indicated that the license plate was issued for a 1991 red Dodge Stealth owned by Defendant. Officer DeLee's computer also automatically ran a driver's license check on the owner of the Stealth. This check revealed *691 Defendant's date of birth, his social security number, and his physical description. It also revealed that Defendant's driver's license had been suspended. However, at the time he received this information, Officer DeLee was no longer in visual range of the Stealth.
Roughly ninety minutes later, Officer DeLee again observed a red Dodge Stealth being driven on another street. Officer DeLee got close to the vehicle to see its license plate number and determined that it was the same car which he had seen earlier. Officer DeLee was unable to see the driver of the vehicle or determine if the driver fit the description of Defendant. Knowing that the registered owner of the Stealth had a suspended license, Officer DeLee stopped the vehicle.
Officer DeLee asked the driver of the Stealth who he was and discovered that it was Defendant. Officer DeLee observed signs which indicated that Defendant had been drinking alcohol and had Defendant perform field sobriety tests. Defendant made statements concerning his consumption of alcohol and agreed to a certified chemical blood test, the results of which indicated that Defendant's blood alcohol content was .11.
The State charged Defendant with operating a vehicle while intoxicated, a Class C misdemeanor,[1] operating a vehicle with a blood alcohol content of .08 or more, a Class C misdemeanor,[2] illegal consumption of an alcoholic beverage by a minor, a Class C misdemeanor,[3] and driving while suspended, a Class A infraction.[4] On March 13, 2003, Defendant filed a motion to suppress all evidence acquired as a result of the traffic stop. On April 3, 2003, a hearing was held upon the motion to suppress, after which the trial court entered an order granting the motion. It is from this order which the State now appeals.
The State claims that under either the Fourth Amendment to the United States Constitution or Article 1, Section 11 of the Indiana Constitution, the stop by Officer DeLee was permissible, and the trial court erred in granting the motion to suppress. We review a trial court's ruling on a motion to suppress in a manner similar to allegations of insufficient evidence. Crabtree v. State, 762 N.E.2d 241, 244 (Ind.Ct.App.2002). We will examine the evidence most favorable to the ruling together with any uncontradicted evidence and neither reweigh evidence nor judge witness credibility. Id.
An investigatory stop of a citizen by a police officer does not violate that individual's Fourth Amendment rights where the officer has a reasonable articulable suspicion of criminal activity. Bogetti v. State, 723 N.E.2d 876, 878 (Ind.Ct.App. 2000). Such reasonable suspicion is determined on a case-by-case basis, and the totality of the circumstances is considered. Id. Similarly, under Article 1, Section 11, a police stop and brief detention of a motorist is reasonable if the officer reasonably suspects that the motorist is engaged in, or is about to engage in, illegal activity. Mitchell v. State, 745 N.E.2d 775, 786 (Ind. 2001). Thus, the question to be decided is whether Officer DeLee had a reasonable suspicion to stop Defendant's vehicle. The ultimate determination of reasonable suspicion is reviewed de novo. Burkett v. State, 736 N.E.2d 304, 306 (Ind.Ct.App.2000).
*692 The State primarily relies upon Kenworthy v. State, 738 N.E.2d 329 (Ind.Ct.App. 2000), trans. denied, wherein a police officer observed a pickup truck similar to one which he knew belonged to Nicholas Snyder. The officer was also aware that Snyder's driver's license had been suspended because of habitual traffic violations. Although the officer was unable to determine who was driving the truck, he followed it and ran a check on the license plate which confirmed that the vehicle was registered to Snyder. After stopping the vehicle, the officer realized that Kenworthy was driving and that Snyder was a passenger. The officer smelled alcohol coming from the cab of the truck and suspected that both occupants had been drinking. Upon being questioned, Kenworthy ran away, only to be found shortly thereafter. Kenworthy failed a sobriety test, refused a chemical test, and was eventually convicted for operating a vehicle after forfeiture of his license for life and resisting law enforcement. Upon appeal, Kenworthy claimed that the stop was constitutionally impermissible in that it was not supported by reasonable suspicion. The Kenworthy court disagreed and held that the police officer had reasonable suspicion to stop and approach the truck where the officer had personal knowledge of Snyder's suspension and was aware that the truck was registered to Snyder, which was confirmed by a radio check. Id. at 331.
Defendant, as did the trial court, relies primarily upon Wilkinson v. State, 743 N.E.2d 1267 (Ind.Ct.App.2001), trans. denied. In Wilkinson, the officer ran a random computer check on the license plate number of a truck parked at a store parking lot. The check revealed that the truck was registered to the defendant, who was a habitual traffic violator. The check also returned a physical description of Wilkinson. A person matching this description left the store, entered the truck, and drove away. Though he did not witness any traffic violations, the officer stopped the truck and arrested Wilkinson. Upon appeal, Wilkinson claimed that the evidence should have been suppressed because the stop was the result of a random check of his license plate number which was not based upon reasonable suspicion. The Wilkinson court cited with approval two out-of-state cases wherein random license plate checks were held not to be searches. Id. at 1270-71 (citing People v. Brand, 71 Ill.App.3d 698, 28 Ill.Dec. 83, 390 N.E.2d 65 (1979) and State v. Donis, 157 N.J. 44, 723 A.2d 35 (1998)). The court held that the police officer had reasonable suspicion to stop Wilkinson by virtue of the evidence obtained through the license check indicating that Wilkinson was not permitted to drive and that the person driving the truck matched Wilkinson's description. 743 N.E.2d at 1271. In a footnote, the court further observed:
"We note that had the officer not obtained a physical description or other information indicating Wilkinson was the driver of the car, we would find the stop impermissible for the same reason as did the court in People v. Brand. Cf. Smith [v. State, 713 N.E.2d 338 (Ind.Ct. App.1999) ], where the violation was a license plate that did not match the car. There, our supreme court [sic] found the stop valid even though the officer apparently did not know who was driving the car. Here, by contrast, the violation did not involve irregularities in the registration or licensure of the vehicle, but of the driver." Id. at n. 2.
In the present case, the trial court relied upon this footnote in granting the motion to suppress.
According to the logic of the Wilkinson case, the trial court properly granted the *693 motion to suppress.[5] We, however, cannot agree with the holding of Wilkinson to the extent that it conflicts with Kenworthy.[6] In Kenworthy, as here, the police officer knew that the registered owner of the vehicle in question had a suspended license. Although Officer DeLee could not see the person driving the vehicle and could not verify if the driver matched the description of Defendant, we hold that Officer DeLee had a reasonable suspicion to stop Defendant's car in order to determine whether it was Defendant who was driving it. Had Officer DeLee been able to see the driver of the vehicle, and been able to discern that the person driving the car did not match the description of Defendant, our result might have been different. However, we are not faced with that situation. Under both federal and state constitutional analysis, Officer DeLee's investigatory stop was permissible.
The judgment of the trial court is reversed, and the cause is remanded for proceedings not inconsistent with this opinion.
FRIEDLANDER, J., and RILEY, J., concur.
NOTES
[1] I.C. § 9-30-5-2(a) (Burns Code Ed. Supp. 2003).
[2] I.C. § 9-30-5-1(a) (Burns Code Ed. Supp. 2003).
[3] I.C. § 7.1-5-7-7(a)(2) (Burns Code Ed. Repl.2001).
[4] I.C. § 9-24-19-1 (Burns Code Ed. Supp. 2003).
[5] Although Defendant does not challenge the validity of the random license plate check, we do not disagree with the Wilkinson court's holding that such was permissible.
[6] The Wilkinson decision does not cite or refer to Kenworthy.