**Damen HOLLY, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0711–CR–930.

Court of Appeals of Indiana.

June 17, 2008.

Timothy J. Burns, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Arthur Thaddeus Perry, Special Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Damen Holly drove a car that was registered to someone whose driver's license was suspended. A police officer conducted a license plate check and learned that the car's owner had a suspended license and pulled Holly over. During the course of the stop, marijuana was found in the car, and Holly was subsequently convicted of possession of marijuana as a Class A misdemeanor. We determine that the officer lacked reasonable suspicion to stop Holly and that the trial court abused its discretion in admitting the marijuana into evidence. Because the evidence is otherwise insufficient to support Holly's conviction, we reverse.

### Facts and Procedural History

During the late evening of January 19, 2007, Officer Jason Ross of the Indianapolis Metropolitan Police Department was conducting a routine patrol in his police car. While traveling southbound on an Indianapolis street, he conducted a license plate check of the vehicle traveling in front of him. The license plate check revealed that the vehicle was registered to a female named Terry Sumler and that Sumler's driver's license was suspended.

Based upon this information, Officer Ross conducted a traffic stop of the vehicle. As he approached the stopped vehicle, he observed a male driver and two passengers. At this point, because of the information he had received through the license plate check, Officer Ross knew that the driver was not the registered owner. Officer Ross asked the driver for his driver's license, which he admitted that he did not have, and Holly identified himself and provided the officer with his full name, date of birth, and Social Security number. Officer Ross then discovered that Holly's driver's license was suspended and that the two passengers, one of whom was Sumler (the vehicle's registered owner), also did not have valid licenses. He ordered Holly and the passengers to get out of the car, and another officer conducted a search of the vehicle. The search revealed a small bag containing what was later confirmed to be marijuana inside of a coffee mug in the center console of the vehicle. Holly informed Officer Ross that the marijuana was his.

The State charged Holly with Class A misdemeanor possession of marijuana.

Ind.Code § 35–48–4–11. During his bench trial, Holly moved to suppress the marijuana, arguing that the officers lacked reasonable suspicion to stop and search the vehicle in which the marijuana was found. Tr. p. 7, 11. The trial court denied the motion. *Id.* at 12. At the conclusion of the bench trial, the court found Holly guilty as charged and sentenced him to three hundred sixty-five days, with three hundred sixty-three days suspended and two days of credit, and eighty hours of community service. The court also suspended his driver's license for one hundred eighty days. Holly now appeals.

### Discussion and Decision

Holly contends that the trial court erred in denying his motion to suppress the evidence discovered during the search of the vehicle because the search violated the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution. Although he claims in his appellate brief that the trial court erred in denying his motion to suppress,[1] Holly did not seek an interlocutory appeal after the denial of his motion to suppress. Instead, he proceeded with his trial and was convicted. Thus, the issue on appeal is more properly framed as whether the trial court abused its discretion when it admitted the challenged evidence at trial. *Packer v. State,* 800 N.E.2d 574, 578 (Ind.Ct.App.2003), *trans. denied.* Our standard of review of a trial court's determination as to the admissibility of evidence is for an abuse of discretion. *Ground v. State,* 702 N.E.2d 728, 730 (Ind. Ct.App.1998). An abuse of discretion occurs if a trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Rolland*

*v. State,* 851 N.E.2d 1042, 1045 (Ind.Ct. App.2006).

The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, provides, in pertinent part, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. In *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court carved out an exception to the Fourth Amendment's general requirement that a police officer must have probable cause or a warrant before stopping a person. Pursuant to *Terry,* a police officer may briefly detain a person for investigational purposes if the officer has reasonable suspicion, based upon specific and articulable facts, that criminal activity might be afoot. *Id.* at 30, 88 S.Ct. 1868. A *Terry* stop "may include a request to see identification and inquiry necessary to confirm or dispel the officer's suspicions." *Hardister v. State,* 849 N.E.2d 563, 570 (Ind.2006) (citing *Hiibel v. Sixth Judicial Dist. Court,* 542 U.S. 177, 185–89, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004)). "Reasonable suspicion" sufficient to support a *Terry* stop "consists of a minimum level of objective justification for making a stop that is more than an inchoate and unparticularized suspicion or hunch." *Beverly v. State,* 801 N.E.2d 1254, 1261 (Ind.Ct.App.2004) (quotation omitted), *trans. denied.* We examine the reasonableness of an officer's suspicion "on a case-by-case basis by engaging in a fact-sensitive analysis of the totality of the circumstances." *Id.* (quotation omitted).

---

1. We disagree with the State's contention that Holly failed to make a timely objection to the admission of evidence found as a result of the officers' search of the vehicle. The transcript makes clear that Holly voiced his objection to the admission of the evidence and explained his rationale once the prosecution began to introduce evidence beyond the point in time that Officer Ross noticed that Holly was not the registered owner of the vehicle.

Whether reasonable suspicion existed to support an investigatory stop is subject to *de novo* review. *State v. Bulington*, 802 N.E.2d 435, 438 (Ind.2004); *Barrett v. State*, 837 N.E.2d 1022, 1027 (Ind.Ct.App. 2005), *trans. denied.*

■ The question before us is whether Officer Ross's knowledge that the registered owner of the vehicle driven by Holly had a suspended license created a reasonable suspicion that criminal activity was afoot when he saw the vehicle being driven. We conclude that it did not.

Our research reveals three published opinions from this Court that have dealt with this issue. Two of them concluded that once a police officer knows that the registered owner of a vehicle lacks a valid driver's license, the officer has reasonable suspicion to conduct a *Terry* stop of the vehicle to further investigate whether the driver is operating it unlawfully. *State v. Ritter*, 801 N.E.2d 689, 693 (Ind.Ct.App. 2004), *trans. denied; Kenworthy v. State*, 738 N.E.2d 329, 331 (Ind.Ct.App.2000), *trans. denied.* The other case, *Wilkinson v. State*, 743 N.E.2d 1267 (Ind.Ct.App. 2001), *trans. denied*, reached the alternative conclusion that whether the officer had reasonable suspicion sufficient to conduct the investigatory stop turned upon whether the officer had information beforehand that the driver was likely the registered owner of the vehicle. *Id.* at 1271 n. 2.

*Kenworthy* examined this issue as a matter of first impression in Indiana and determined that an officer has reasonable suspicion to stop a vehicle when the officer knows that the registered owner's driver's license has been suspended. In *Kenworthy*, an officer observed a truck driving and knew that the owner of the truck, Nicholas Snyder, had a suspended driver's license. Because it was nighttime, the officer could not visually confirm that Snyder was the driver. Nonetheless, he stopped the truck. Upon approaching the vehicle, the officer learned that Edwin Kenworthy was actually the driver and that Snyder was a passenger. However, the officer detected the odor of alcohol on the two men and questioned them, leading to a series of events that culminated in a search of the car and criminal convictions for Kenworthy. On appeal, Kenworthy argued that the officer lacked reasonable suspicion to stop the truck initially. In concluding that once the officer knew that the registered owner of the truck had a suspended license the officer "had the reasonable suspicion to stop and approach the truck to investigate," the Court relied upon *Smith v. State*, 713 N.E.2d 338 (Ind. Ct.App.1999), *trans. denied. Kenworthy*, 738 N.E.2d at 331–32. The proposition from *Smith* upon which *Kenworthy* relied was that a "mismatched license plate on [a] vehicle provided [the] police officer with reasonable suspicion that the vehicle could have been stolen or retagged, thereby warranting a traffic stop." *Id.* (citing *Smith*, 713 N.E.2d at 342). In essence, the *Kenworthy* Court extended the *Smith* analysis of irregularities in license plates to irregularities in drivers' licenses.

Only months after *Kenworthy* was decided, another panel of this Court noted the difference between irregularities in license plates and irregularities in drivers' licenses. In *Wilkinson*, an officer ran a license plate check of a truck parked in a convenience store parking lot and discovered that the registered owner of the truck did not have a valid driver's license. He also received a physical description of the truck's registered owner. A man matching the physical description obtained by the officer got into the truck and drove away. Thereafter, the officer conducted a traffic stop of the truck, identified Wilkinson as the owner and driver of the truck,

and arrested him. On appeal, Wilkinson challenged the propriety of the investigatory stop, and this Court held that the stop was based upon reasonable suspicion:

> [T]he officer ... had reasonable suspicion to stop Wilkinson by virtue of the evidence obtained through the computer check indicating Wilkinson was driving the car. The computer check returned a description of Wilkinson that the officer characterized as "a physical description of what's on your driver's license, such as height, weight, hair and eye color." The officer testified that he had a clear view of the person who drove the truck away from the convenience store and that the driver of the car "closely matched the height and weight and hair color." ... The officer had information to the effect that Wilkinson, the driver to whom the truck was registered, presently had a suspended license.

*Wilkinson*, 743 N.E.2d at 1271 (citations omitted). The Court then included a footnote indicating that the determination of whether the investigatory stop was valid turns upon whether the police officer had information indicating that the registered owner of the vehicle was actually driving it without a valid license: "We note that had the officer not obtained a physical description or other information indicating Wilkinson was the driver of the car, we would find the stop impermissible...." *Id.* at 1271 n. 2. Acknowledging the holding in Smith upon which *Kenworthy* relied, the *Wilkinson* panel pointed out the difference between a situation in which an officer knows that the registered owner of the vehicle is driving it without a license and a situation which "involve[s] irregularities in the registration or licensure of the vehicle"

(as in *Smith*). *Id.* ("Here, by contrast, the violation did not involve irregularities in the registration or licensure of the vehicle, but of the driver.").

Several years later, this Court once again addressed the question of whether an officer's knowledge that a vehicle owner's license is suspended leads, by itself, to reasonable suspicion sufficient to permit an investigatory stop. This time the Court followed *Kenworthy*. In *Ritter*, a police officer conducted a random license plate check upon a vehicle and learned that the registered owner's driver's license was suspended. The check also revealed the owner's age, physical description, and Social Security number. Although the officer "was unable to see the driver of the vehicle or determine if the driver fit the description" of the registered owner, the officer conducted a traffic stop. *Ritter*, 801 N.E.2d at 691. After identifying Ritter as both the vehicle's owner and driver, the officer observed that Ritter appeared to be intoxicated. During subsequent criminal proceedings, Ritter moved to suppress the evidence collected as a result of the traffic stop, and the trial court granted the motion, relying upon *Wilkinson*. On appeal, this Court followed *Kenworthy*, disagreeing with *Wilkinson's* observation that an officer armed only with the knowledge that the owner of a vehicle has a suspended license lacks reasonable suspicion to stop the vehicle. *Id.* at 693.[2]

We agree with *Wilkinson* that a police officer's knowledge that the registered owner of a vehicle lacks a valid license, by itself, is insufficient to provide the officer with reasonable suspicion suffi-

---

**2.** The *Ritter* panel expressed some concern that *Wilkinson* did not cite *Kenworthy* in its analysis. *Ritter*, 801 N.E.2d at 693 n. 6. We note that although *Wilkinson* did not refer- ence *Kenworthy*, it explained why it did not find *Smith*, to which *Kenworthy* cited, applicable to the issue at hand.

cient to permit an investigatory stop.[3] The central inquiry in determining whether an investigatory stop is permissible is whether the officer has a reasonable suspicion that criminal activity is afoot. *Terry,* 392 U.S. at 30, 88 S.Ct. 1868. Although an officer needs only "a minimum level of objective justification for making a stop," the justification must be "more than an inchoate and unparticularized suspicion or hunch." *Beverly,* 801 N.E.2d at 1261. A police officer's knowledge that an owner of a vehicle may not lawfully drive creates reasonable suspicion of criminal activity *only where the officer has reason to believe that the owner is actually driving the vehicle.* In a case such as this where the officer has observed absolutely nothing that would indicate that the driver of the vehicle is the owner and the officer has no reason to believe that the vehicle is stolen or that a law is otherwise being broken, the officer lacks objective justification for conducting an investigatory stop. There is an important distinction between situations like that presented in *Smith* (to which *Kenworthy* cited) where an officer knows that something is amiss by virtue of a license plate being fastened to a car upon which it does not belong and situations like that presented here, where there is nothing wrong with the vehicle's registration or licensure and the officer makes a blind assumption about the driver. There are many reasons why a person who is not the registered owner of a vehicle might drive the vehicle, and we cannot approve of investigatory traffic stops that are justified by nothing more than a police officer's knowledge that the owner's license is suspended. Thus, we conclude that Officer Ross did not have reasonable suspicion that criminal activity was afoot when he conducted an investigatory stop of the vehicle driven by Holly. The evidence collected as a result of this stop, including the marijuana seized during the search and Holly's subsequent admission that he owned the marijuana, was therefore inadmissible under the Fourth Amendment, and the trial court abused its discretion in admitting it.[4] The remaining evidence is insufficient to support Holly's conviction for possession of marijuana, and his conviction must be reversed. *See Auten v. State,* 542 N.E.2d 215, 220 (Ind.Ct.App. 1989) (reversing a conviction based upon insufficient evidence after concluding that the evidence supporting the conviction was inadmissible).

Reversed.

MAY, J., and MATHIAS, J., concur.

---

3. It should be noted that this author signed on to Kenworthy but has since reconsidered the issue.

4. Because we reach this conclusion, we need not address Holly's claim under the Indiana Constitution.