Anthony L. MALONEY, Appellant–Petitioner,

v.

STATE of Indiana, Appellee–Respondent.

No. 29A02–0610–PC–936.

Court of Appeals of Indiana.

Aug. 23, 2007.

Jeffrey J. Jinks, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

Anthony L. Maloney appeals the post-conviction court's denial of his petition for post-conviction relief. Maloney raises two issues, which we consolidate and restate as whether Maloney was denied the effective assistance of trial counsel. We affirm.

The relevant facts follow. On April 30, 2005, Carmel Police Officer Timothy Byrne ran a random license plate check of Maloney's vehicle. Officer Byrne noticed that the registered owner of the vehicle, Maloney, had a suspended driver's license. Officer Byrne followed the vehicle and compared the computer description of Maloney with the driver of the vehicle. Officer Byrne then stopped the vehicle and ultimately arrested Maloney.

The State charged Maloney with operating a vehicle while intoxicated as a class C misdemeanor,[1] operating a vehicle with a BAC of 0.08 or more as a class C misdemeanor,[2] driving while suspended as a class A misdemeanor,[3] operating a vehicle while intoxicated as a class D felony,[4] and operating a vehicle with a BAC of 0.08 or more as a class D felony.[5] Maloney pleaded guilty to operating a vehicle with a BAC of 0.08 or more as a class D felony.

On July 24, 2006, Maloney filed a petition for post-conviction relief, alleging that his arrest was the result of a warrantless search under the Fourth Amendment of the United States Constitution and Article I, Section 11 of the Indiana Constitution and that he was denied the effective assistance of trial counsel. After a hearing, the post-conviction court entered findings of fact and conclusions thereon as follows:

\* \* \* \* \*

*CONCLUSIONS OF LAW*

1. In *Wilkinson v. State*, 743 N.E.2d 1267 (Ind.App., 2001), Wilkinson raised the same argument as is presented in this case, that argument being that the random checks of license plate numbers were constitutionally impermissible because they were carried out without any reasonable and articulable suspicion of a violation of law. In that case and in this, no authority was offered in direct support of the position taken there, and here, that the "search" was improper. The *Wilkinson* court declined to hold that the random license plate check was a "search."

2. Cases subsequent to *Wilkinson* including *State of Indiana v. Eric Ritter*, 801 N.E.2d 689 (Ind.App., 2004), and *Kenworthy v. State*, 738 N.E.2d

---

1. Ind.Code § 9–30–5–2 (2004).

2. Ind.Code § 9–30–5–1 (2004).

3. Ind.Code § 9–24–19–3 (2004).

4. Ind.Code § 9–30–5–3 (2004).

5. *Id.*

329 (Ind.App., 2000), have gone on to hold that even where the officer could not readily determine that the driver of a vehicle was the registered owner who was known to be suspended (either by the officer's personal knowledge or by BMV computer check) that the knowledge of the registered owner's status alone as a suspended driver was sufficient to stop the vehicle registered to that person for further investigation.

3. In this case, the Bureau of Motor Vehicles' information that the registered owner of the vehicle being followed by Officer Byrne was suspended and his match of the description of the registered owner to the driver of the vehicle were articulable facts from which the officer had reasonable suspicion to believe that the operator of the vehicle was committing the misdemeanor offense of Driving While Suspended. This was sufficient to conduct an investigatory stop.

\* \* \* \* \*

8. The stop of [Maloney] did not violate the 4th Amendment to the U.S. Constitution or Article I, Section 11 of the Indiana Constitution.

9. Counsel Stephenie Gookins' representation did not fall below the objective standards of reasonable [sic] under prevailing professional norms when she chose not to file a motion to suppress evidence from the stop of [Maloney], when existing Indiana case law upheld the officer's basis for that stop.

10. Even if Ms. Gookins was required by prevailing professional norms to file a motion to suppress in this case, [Maloney] has failed to meet his burden of showing prejudice by establishing that such motion would have been successful.

Appellant's Appendix at 4–6.

Before discussing Maloney's allegations of error, we note the general standard under which we review a post-conviction court's denial of a petition for post-conviction relief. The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. *Fisher v. State,* 810 N.E.2d 674, 679 (Ind.2004); Ind. Post–Conviction Rule 1(5). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id.* On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* Further, the post-conviction court in this case entered findings of fact and conclusions thereon in accordance with Indiana Post–Conviction Rule 1(6). *Id.* "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Id.* In this review, we accept findings of fact unless clearly erroneous, but we accord no deference to conclusions of law. *Id.* The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.*

■ The issue is whether Maloney was denied the effective assistance of trial counsel. To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *Ben–Yisrayl v. State,* 729 N.E.2d 102, 106 (Ind.2000) (citing *Strick-*

land v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), reh'g denied), reh'g denied, cert. denied, 534 U.S. 830, 122 S.Ct. 73, 151 L.Ed.2d 38 (2001). A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. French v. State, 778 N.E.2d 816, 824 (Ind.2002). To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. Failure to satisfy either prong will cause the claim to fail. Id.

■ Because Maloney was convicted pursuant to a guilty plea, we analyze his claims under Segura v. State, 749 N.E.2d 496, 499 (Ind.2001). Segura categorizes two main types of ineffective assistance of counsel cases. Smith v. State, 770 N.E.2d 290, 295 (Ind.2002). The first is where the defendant's lawyer fails to advise the defendant on an issue that impairs or overlooks a defense. Id. The second type of case is where the defendant's lawyer incorrectly advises the defendant as to penal consequences. Id. Maloney raises the first type of issue here by arguing that his trial counsel overlooked filing a motion to suppress. If a petitioner is convicted pursuant to a guilty plea and later claims that his counsel rendered ineffective assistance because counsel overlooked or impaired a defense, the petitioner must show that a defense was indeed overlooked or impaired and that the defense would have likely changed the outcome of the proceeding. Segura, 749 N.E.2d at 499.

According to Maloney, his trial counsel should have filed a motion to suppress because the officer's "search" of Maloney's license plates records violated the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution. Maloney contends that "[t]he viewing of the license plate was not improper, but the subsequent search of [Maloney's] personal records was beyond the permitted constitutional scope." Appellant's Reply Brief at 6. Maloney compares the "search" of his license plate records to sobriety checkpoints, which, Maloney argues, require individualized suspicion. Thus, according to Maloney, individualized suspicion is required for an officer to "investigate and search a citizen's license plate." Appellant's Brief at 7.

### A. Fourth Amendment.

■ The Fourth Amendment to the United States Constitution guarantees the right to be secure against unreasonable search and seizure. Black v. State, 810 N.E.2d 713, 715 (Ind.2004). In Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884–1885, 20 L.Ed.2d 889 (1968), the United States Supreme Court held that an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when, based on a totality of the circumstances, the officer has a reasonable, articulable suspicion that criminal activity is afoot. Hardister v. State, 849 N.E.2d 563, 570 (Ind.2006). A Terry stop is a lesser intrusion on the person than an arrest and may include a request to see identification and inquiry necessary to confirm or dispel the officer's suspicions. Id. It is the requirement of reasonable suspicion that strikes a balance between the government's legitimate interest in traffic safety and an individual's reasonable expectation of privacy. Denton v. State, 805 N.E.2d 852, 855–856 (Ind.Ct.App.2004), trans. denied.

We find Maloney's comparison to sobriety checkpoints inapplicable. Rather, we find the analysis in *Wilkinson v. State*, 743 N.E.2d 1267 (Ind.Ct.App.2001), *trans. denied*, persuasive despite Maloney's claims that the case was wrongly decided. There, we encountered a remarkably similar set of circumstances:

A Fishers police officer saw Wilkinson's truck pull into a convenience store parking lot late one afternoon. The officer testified that he had an in-car computer that could run checks of license plate numbers, driver's license numbers, vehicle identification numbers, and other information. The officer typically ran license plate numbers at random throughout his shift. He had no particular reason to run the check of Wilkinson's license plate. The officer testified it was a standard procedure of the Fishers Police Department to run license plate checks at random.

The computer check revealed the truck was registered to Wilkinson and that Wilkinson was an habitual traffic violator (HTV). It also provided a physical description of Wilkinson. Wilkinson left the store, entered the truck, and drove away. The officer, after noting the driver fit Wilkinson's description, stopped Wilkinson and arrested him. The officer did not see Wilkinson commit a traffic violation.

743 N.E.2d at 1269. On appeal, the defendant argued that "evidence obtained as a result of the police officer's random checks of license plate numbers should have been suppressed because it resulted from a random search carried out without any reasonable and articulable suspicion that Wilkinson might have violated the law." *Id.*

We observed that neither party had directed us to Indiana authority directly addressing a random computer check of license plate numbers. *Id.* at 1270.

However, we noted that we had previously held, without explicitly addressing whether the random check was a search, that a traffic stop was justified by a computer check indicating the plate was not on the car to which it was registered. *Id.* (citing *Smith v. State*, 713 N.E.2d 338 (Ind.Ct.App.1999), *trans. denied*). Moreover, we noted that "[d]ecisions from other states that have addressed this question appear to find consistently that a suspicionless check of license plate numbers is not an improper search." *Id.* (citing *People v. Brand*, 71 Ill.App.3d 698, 28 Ill.Dec. 83, 390 N.E.2d 65 (1979), and *State v. Donis*, 157 N.J. 44, 723 A.2d 35 (1998)). With regard to *Donis*, we observed:

Similarly, in *State v. Donis*, 157 N.J. 44, 723 A.2d 35 (1998) the court determined a random computer check of the license plate numbers of passing cars was not a "search." The court reasoned that because license plate information was publicly displayed and a state statute authorized use of vehicular license information for law enforcement purposes, drivers' privacy rights were not implicated and no articulable suspicion of criminal conduct was required. There, as here, the police stopped the driver based on the physical description, received via computer check, of the registered owner of the car. The stop was held valid and did not constitute an unreasonable seizure because the officer reasonably believed there was a "general match" between the appearance of the driver and the description received via the computer check. *Id.* at [58], 723 A.2d 35.

*Id.* at 1270–1271.

We concluded that the officer had reasonable suspicion to stop Wilkinson "by virtue of the evidence obtained through the computer check indicating Wilkinson

was driving the car." *Id.* at 1271. "The officer had information to the effect that Wilkinson, the driver to whom the truck was registered, presently had a suspended license." *Id.* "Our courts have generally found that when there is evidence a crime has taken place, police may stop an individual who fits the description of the violator." *Id.* (citing *Samaniego v. State*, 553 N.E.2d 120 (Ind.1990), *reh'g denied*). Thus, we concluded that the trial court did not abuse its discretion by admitting evidence obtained pursuant to the stop of Wilkinson. *Id.*

Here, the State also points out that, under Ind.Code § 9–14–3–5, the Bureau of Motor Vehicles ("BMV") "shall prepare and deliver information on titles, registrations, and licenses and permits upon the request of any person" subject to certain limitations. Specifically, the BMV may also disclose "(1) the Social Security number; (2) the federal identification number; (3) the driver's license number; (4) the digital image of the driver's license applicant; (5) a reproduction of the signature secured under IC 9–24–9–1 or IC 9–24–16–3; or (6) medical or disability information" to a law enforcement officer. Ind.Code § 9–14–3–5. Additionally, the BMV may disclose personal information "[f]or use by a government agency, including a court or law enforcement agency, in carrying out its functions, or a person acting on behalf of a government agency in carrying out its functions." Ind.Code § 9–14–3.5–10.

■■ Despite these statutes, Maloney argues that officers cannot "go on [a] fishing expedition of the records maintained by the State when there is no rational and logical basis to do so." Appellant's Reply Brief at 5. We note that "[t]o trigger Fourth Amendment protections, a search arises out of an intrusion by a government actor upon an area in which a person maintains a 'reasonable expectation of pri-

vacy.'" *Holder v. State*, 847 N.E.2d 930, 935 (Ind.2006) (quoting *Katz v. U.S.*, 389 U.S. 347, 360, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967)). "[W]hether Fourth Amendment protections should be applied embraces a two-part inquiry: (1) whether a person has 'exhibited an actual (subjective) expectation of privacy;' and (2) whether 'the expectation [is] one that society is prepared to recognize as reasonable.'" *Id.* at 935–936 (quoting *Katz*, 389 U.S. at 361, 88 S.Ct. at 516).

Maloney cites no authority that he would have a reasonable expectation of privacy from government intrusion in the BMV. On the other hand, the State cites decisions from Indiana and other jurisdictions that find no Fourth Amendment violation under the same or similar circumstances. *See, e.g., Wilkinson*, 743 N.E.2d at 1270–1271; *State v. Bjerke*, 697 A.2d 1069, 1073 (R.I.1997) (finding no Fourth Amendment violation in an officer's computer check of the defendant's license plate because "such plates and the information behind them are within the control and custody of the state through the Registry of Motor Vehicles" and the defendant did not have "an expectation of privacy from the state when it is well known to all that the state is the very body that issues, controls, and regulates motor vehicle registration license plates").

We conclude that Maloney could have no reasonable expectation of privacy from law enforcement officers in the BMV records. We note that the Indiana Supreme Court reached a similar conclusion regarding a defendant's DNA profile in a database when the court held: "Nor does society recognize an expectation of privacy in records made for public purposes from legitimately obtained [DNA] samples." *Smith v. State*, 744 N.E.2d 437, 439 (Ind.2001). Maloney's Fourth Amendment argument fails, and thus, Maloney has failed to dem-

onstrate that his trial counsel overlooked a defense that would have likely changed the outcome of the proceeding. Consequently, the post-conviction court's denial of his petition for post-conviction relief on this basis is not clearly erroneous. *See, e.g., Richardson v. State,* 800 N.E.2d 639, 646–647 (Ind.Ct.App.2003) (holding that the petitioner failed to show that he was prejudiced by his counsel's failure to file a motion to dismiss), *trans. denied.*

**B.** *Article I, § 11 of the Indiana Constitution.*

Under Article I, Section 11 of the Indiana Constitution, the search and seizure analysis is slightly different than under the Fourth Amendment of the United States Constitution. The purpose of Article I, Section 11 is "to protect from unreasonable police activity those areas of life that Hoosiers regard as private." *Brown v. State,* 653 N.E.2d 77, 79 (Ind.1995). In deciding whether a warrantless search and seizure violates Article I, § 11, we must determine whether, under the totality of the circumstances, the search was reasonable. *Id.*

Maloney cites no authority that the statutorily authorized law enforcement search of records maintained by the BMV is unreasonable. Under similar circumstances, the Indiana Supreme Court has found that a law enforcement search of a DNA database did not violate the Indiana Constitution. *See, e.g., Smith,* 744 N.E.2d at 440 ("The police action in obtaining DNA samples from a rape suspect, and then comparing that profile to those created in other cases, was reasonable police conduct and not an unreasonable invasion of any private area of life."). Again, Maloney has failed to demonstrate that his trial counsel overlooked a defense that would have likely changed the outcome of the proceeding. Consequently, the post-conviction court's

denial of his petition for post-conviction relief on this basis is not clearly erroneous. *See, e.g., Richardson,* 800 N.E.2d at 646–647 (holding that the petitioner failed to show that he was prejudiced by his counsel's failure to file a motion to dismiss).

For the foregoing reasons, we affirm the post-conviction court's denial of Maloney's petition for post-conviction relief.

Affirmed.

MAY, J., and BAILEY, J., concur.