**Roger J. SCHLATTER, Jr.,
Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 17A05–0802–PC–61.**

Court of Appeals of Indiana.

Aug. 15, 2008.

---

7. Baumgartner does not allege that he was under the age of eighteen, as required by Indiana Code 35–42–4–5(c).

———

Adam C. Squiller, Taylor and Squiller, P.C. Auburn, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Marjorie Lawyer–Smith, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

MATHIAS, Judge.

Roger J. Schlatter, Jr., ("Schlatter") pleaded guilty in DeKalb Superior Court to Class B felony sexual misconduct with a minor. Schlatter filed a petition for post-conviction relief, which the post-conviction court denied. Schlatter now appeals and claims that the post-conviction court erred in concluding that Schlatter's trial counsel was not ineffective for failing to present the defense of automatism. Concluding that the defense of automatism was not available to Schlatter due to his voluntary intoxication, we affirm.

**Facts and Procedural History**

Schlatter has a daughter, K.S., who was fifteen years old at the time relevant to this appeal. K.S. lived with her mother and step-father, and Schlatter lived with his wife and their three children. On August 16, 2005, K.S. was at her father's house to celebrate his birthday. Schlatter offered his daughter alcohol, which she drank. The two eventually became intoxicated. K.S. became intoxicated to the point that her speech was slurred, she could not stand, and she became sick and vomited. K.S. eventually went to sleep on the couch, but awoke when Schlatter began to have sexual intercourse with her. K.S. told Schlatter to go away and "curled up in a ball." Appellant's App. p. 41. K.S. later discovered that she was pregnant and had an abortion. When interviewed by the police, Schlatter admitted to having become very intoxicated but acted surprised when confronted with the accusation that he had sexual intercourse with his daughter. DNA tests of the fetus confirmed that Schlatter was the father.

On April 10, 2006, the State charged Schlatter with Class B felony incest and Class B felony sexual misconduct with a minor. On April 10, 2007, Schlatter pleaded guilty in exchange for the State dismissing the charge of incest. Schlatter admitted that he must have had sex with his daughter, but claimed not to remember having done so. On March 12, 2007, the trial court sentenced Schlatter to the advisory sentence of ten years, with four years suspended.

Schlatter filed a notice of appeal on May 7, 2007. On June 4, 2007, Schlatter filed a *Davis/Hatton* motion in this court to stay his direct appeal so that he could file a petition for post-conviction relief in the trial court. On July 6, 2007, this court entered an order dismissing the appeal without prejudice and remanding the cause to the trial court for post-conviction proceedings. Schlatter then filed a petition for post-conviction relief on July 16, 2007, alleging, *inter alia*, that his trial counsel was ineffective for failing to raise the defense of automatism. The State answered Schlatter's petition and eventually filed a motion for summary judgment. Schlatter responded to the State's motion, and a hearing on the issue was held on December 11, 2007. On December 13, 2007, the trial court entered an order granting the State's motion for summary judgment and denying Schlatter's petition for post-conviction relief. Schlatter now appeals.

## Discussion and Decision

■ Although Schlatter initially filed a direct appeal, the issues he currently presents are related only to the trial court's denial of his petition for post-conviction relief. Post-conviction proceedings provide defendants the opportunity to present issues which were not known at the time of the original trial or that were not available upon direct appeal. *Ben–Yisrayl v. State*, 738 N.E.2d 253, 258 (Ind. 2000). A defendant who petitions for post-conviction relief has the burden of establishing his grounds for relief by a preponderance of the evidence. *Id.* (citing Ind. Post–Conviction Rule 1(5)). Therefore, a petitioner who does not prevail below appeals from a negative judgment. *Id.*

In the present case, the trial court granted the State's motion for "summary judgment." Indiana Post–Conviction Rule 1(4)(g) (2008) provides in relevant part:

> The court may grant a motion by either party for summary disposition of the petition when it appears from the pleadings, depositions, answers to interrogatories, admissions, stipulations of fact, and any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

■ When a post-conviction court rules on a motion for summary disposition under Rule 1(4)(g), we review the court's decision as we would a ruling on a motion for summary judgment. *Allen v. State*, 791 N.E.2d 748, 753 (Ind.Ct.App.2003), *trans. denied.* The issue before us is the same as that before the post-conviction court, and we follow the same process. Id. "A grant of summary disposition is erroneous unless 'there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.'" *Id.* (quoting P–C.R. 1(4)(g)). On review, we must resolve all doubts about facts, and the inferences to be drawn therefrom, in favor of the nonmovant, and the appellant has the burden of persuading us that the post-conviction court erred. *Id.*

The law is well settled that, to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient and that he was prejudiced by the deficient performance. *Ben–Yisrayl*, 738 N.E.2d at 260. Counsel's performance is deemed deficient if it falls below an objective standard of reasonableness. Id. To show that he was prejudiced by counsel's deficient performance, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. The failure to satisfy either prong causes the ineffective assistance claim to fail. *Maloney v. State*, 872 N.E.2d 647, 650 (Ind.Ct.App.2007).

Because Schlatter presents a claim of ineffective assistance of trial counsel following a guilty plea, we analyze his claims under *Segura v. State*, 749 N.E.2d 496 (Ind.2001). See *Maloney*, 872 N.E.2d at 650. In *Segura*, our supreme court set forth two main types of ineffective assistance of counsel claims following guilty pleas. The first type is where the defendant's counsel fails to advise the defendant on an issue that impairs or overlooks a defense. See *Maloney*, 872 N.E.2d at 650. The second type is where the defendant's counsel incorrectly advises the defendant as to penal consequences. Id. By claiming that his trial counsel should have raised the defense of automatism, Schlatter presents the first type of claim, i.e. that his counsel overlooked a defense. As such, he must first show that a defense was indeed overlooked or impaired. See id. He must then show that this overlooked or impaired defense would have likely changed the outcome of the proceeding. *See id.*

 Schlatter claims that his trial counsel rendered ineffective assistance by failing to present the defense of automatism. The State argues that the defense of automatism was unavailable to Schlatter in light of his voluntary intoxication. The issue before us is therefore a question of law; if the defense of automatism was not available to Schlatter, then his trial counsel could not have been ineffective for failing to present it.

To address Schlatter's argument, we first look to the nature of the automatism defense he claims was overlooked by his trial counsel. This defense was explained by our supreme court in *McClain v. State*, 678 N.E.2d 104, 106 (Ind.1997):

> Automatism has been defined as "the existence in any person of behavior of which he is unaware and over which he has no conscious control." Donald Blair, *The Medicolegal Aspects of Automatism*, 17 MED. SCI. LAW 167 (1977) (internal quotation marks omitted); see also BLACK'S LAW DICTIONARY 134 (6th ed.1990) (automatism is "[b]ehavior performed in a state of mental unconsciousness ... apparently occurring without will, purpose, or reasoned intention"). A seminal British case concisely described automatism as "connoting the state of a person who, though capable of action, is not conscious of what he is doing." *Bratty v. Attorney–General of Northern Ireland*, 3 All E.R. 523, 527 (1961) (internal quotation marks omitted). Automatism manifests itself in a range of conduct, including somnambulism (sleepwalking), hypnotic states, fugues, metabolic disorders, and epilepsy and other convulsions or reflexes. See *generally* Eunice A. Eichelberger, Annotation, *Automatism or Unconsciousness as Defense to Criminal Charge*, 27 A.L.R.4th 1067 (1984) (hereafter "*Automatism*"); Michael J. Davidson & Steve Walters, *United States v. Berri: The*

> *Automatism Defense Rears Its Ugly Little Head*, 1993–OCT. ARMY LAW. 17 (discussing treatment of automatism defense in military and civilian jurisdictions)[.]

 The *McClain* court noted that Indiana Code section 35–41–2–1(a) provides that "[a] person commits an offense only if he voluntarily engages in conduct in violation of the statute defining the offense." Id. at 107. The court explained that this section "codified the axiom that voluntariness is a general element of criminal behavior and reflected the premise that criminal responsibility postulates a free agent confronted with a choice between doing right and doing wrong and choosing freely to do wrong." *Id.* at 107 (citations and internal quotations omitted). The defense of automatism bears on the voluntariness of a defendant's actions. *Id.* Thus, automatism is a defense because automatistic behavior is not voluntary. *See id.*

Unlike automatism, voluntary intoxication is not a defense in Indiana. Indiana Code section 35–41–2–5 (2004) provides, "Intoxication is not a defense in a prosecution for an offense and may not be taken into consideration in determining the existence of a mental state that is an element of the offense unless the defendant meets the requirements of IC 35–41–3–5 [setting forth the defense of involuntary intoxication]." This statute was upheld as constitutional by our supreme court in *Sanchez v. State*, 749 N.E.2d 509 (Ind.2001).

Schlatter argues that because he claimed not to have remembered his actions and seemed to be shocked that he had had sexual intercourse with his daughter, his trial counsel should have argued that he acted automatically and was therefore not culpable for his actions. Noting that Schlatter was, admittedly, extremely

intoxicated at the time he committed the acts in question, the State argues that Schlatter's automatism defense is little more than a claim of voluntary intoxication, which is not permitted pursuant to section 35–41–2–5 and *Sanchez*. Schlatter responds that he is not arguing that he was not culpable because of his intoxication, but because there is evidence that he acted involuntarily, albeit at least partially because of his intoxication. Specifically, Schlatter claims that the record is clear that he was unaware of his actions as he did not remember having sex with his daughter. Based upon *Sanchez*, we conclude that the defense of automatism was not available to Schlatter because of his voluntary intoxication.

The *Sanchez* court held that the voluntary intoxication statute, by prohibiting the consideration of voluntary intoxication in determining the existence of a "mental state that is an element of the offense," eliminated the requirement that the defendant act "knowingly" or "intentionally." 749 N.E.2d at 517. The court rejected the notion that the voluntary intoxication statute eliminated the requirement of Indiana Code section 35–41–2–1 that voluntary actions are necessary for culpability. *Sanchez*, 749 N.E.2d at 517. The court then stated:

> even if there may be an act rendered involuntary by intoxication, itself a doubtful premise in most circumstances, *the legislature has decreed that the intoxication, if voluntary, supplies the general requirement of a voluntary act.* That is sufficient to place the voluntarily

intoxicated offender at risk for the consequences of his actions, even if it is claimed that the capacity has been obliterated to achieve the otherwise requisite mental state for a specific crime. *Id.* at 517 (emphasis added).

Applying this to the present case, it becomes apparent that an automatism defense would not have been available to Schlatter. The allegedly overlooked defense of automatism is a claim the defendant did not act voluntarily as required by Indiana Code section 35–41–2–1. *See McClain*, 678 N.E.2d at 107. According to *Sanchez*, however, Schlatter acted voluntarily as required by Indiana Code 35–41–2–1 when he voluntarily became intoxicated. *See Sanchez*, 749 N.E.2d at 517. Therefore, because Schlatter acted voluntarily in becoming intoxicated, he cannot now claim that his actions which resulted from his intoxication were involuntary, and because he cannot claim that his actions were involuntary, the automatism defense is unavailable to him.[1]

Since the automatism defense was unavailable to Schlatter, his trial counsel's failure to raise this defense did not fall below an objective standard of reasonableness. The post-conviction court therefore properly denied Schlatter's petition for post-conviction relief.

Affirmed.

MAY, J., and VAIDIK, J., concur.

---

**1.** Even if the automatism defense were not barred because of Schlatter's voluntary intoxication, we are not convinced that the facts of the present case establish automatism. As explained in *McClain*, there are exceptions to the automatism defense for conditions not deemed automatistic in nature, such as amnesia. 678 N.E.2d at 107 n. 5. "It is one thing to say a person acted involuntarily, and quite another to say that the person has no memory of the event." *Id.* The main evidence of Schlatter's alleged automatism is that he cannot remember having sex with his daughter. This is more akin to amnesia than automatism.