**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**CARA SCHAEFER WIENEKE**
Wieneke Law Office, LLC
Plainfield, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| TERRY POUNDS, | ) |
| | ) |
| Appellant-Petitioner, | ) |
| | ) |
| vs. | )   No.  18A02-1206-PC-456 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable Marianne L. Vorhees, Judge
Cause Nos.  18C01-0502-FA-2
18C01-1106-PC-5
18C01-0508-FA-8
18C01-1106-PC-6

**January 24, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

In two separate cases, Terry Pounds ("Pounds") pleaded guilty to Dealing in Cocaine, as a Class A felony ("FA-02"),[1] and Maintaining a Common Nuisance, as a Class D felony ("FA-08").[2] Upon entry of judgment in FA-08, the trial court ordered that he serve the sentences for FA-02 and FA-08 consecutively. Pounds subsequently filed separate petitions in FA-02 and FA-08 for post-conviction relief, seeking to vacate the plea agreements in both cases. After consolidated proceedings, the post-conviction court denied his petitions, and he now appeals.

We affirm.

**Issues**

Pounds raises two issues for our review, which we restate as whether the guilty pleas of Pounds in FA-02 and FA-08 were not knowing and intelligent due to ineffective assistance of counsel because:

    I.    In FA-08, Pounds's trial counsel failed to pursue a defense related to the statutory procedures for a telephonic probable cause hearing; and

    II.    In FA-02 and FA-08, Pounds's trial counsel did not properly advise Pounds that he was not subject to a habitual offender enhancement.

**Facts and Procedural History**

In January 2005, Delaware County Officer Jeffrey Stanley ("Officer Stanley") obtained information from a confidential informant that Pounds was dealing in cocaine in

---

[1] Ind. Code § 35-48-4-1.

[2] I.C. § 35-48-4-13.

2

Muncie. On January 6, 2005, around 7:15 p.m., a telephonic probable cause hearing took place, in which Officer Stanley presented information to Master Commissioner Ron Henderson that was determined sufficient to give rise to probable cause.[3] As a result, a warrant was issued for police to search Pounds's home.

On January 7, 2005, police executed the search warrant. Cocaine and marijuana were found in Pounds's residence. Pounds attempted to flee the scene but was subsequently arrested. On January 27, 2005, Pounds was charged with Dealing in Cocaine, as a Class A felony; Possession of Marijuana, as a Class A misdemeanor[4]; and Maintaining a Common Nuisance, as a Class D felony. After his arrest, Pounds was released on bond.

On February 18, 2005, after he had been released on bond in FA-08, Pounds and another individual participated in a controlled purchase of drugs. As a result, Pounds was arrested. Pounds had travelled to the location of the controlled purchase in a car, and after his arrest, a police search of the car discovered a ball of crack cocaine. After his arrest, Pounds's bond was revoked.

On February 24, 2005, Pounds was charged with two counts of Dealing in Cocaine, as Class A felonies. That day, Ronald Smith ("Smith") entered his appearance as counsel on Pounds's behalf in FA-08. On March 9, 2005, Smith appeared as counsel for Pounds for the purpose of an initial hearing in FA-02; the hearing was conducted that day.

On March 23, 2005, the State amended its charging information in FA-08 to allege

---

[3] See I.C. §§ 35-33-5-2 & -8 (setting forth procedures for obtaining a warrant generally, and requirements for such hearings conducted by telephone and facsimile).

[4] I.C. § 35-48-4-11.

3

that Pounds was a Habitual Offender.[5]  On March 29, 2005, the State alleged that Pounds was a Habitual Offender in FA-02.

On April 29, 2005, Renee Conley ("Conley") entered an appearance as counsel for Pounds in FA-02.  In May 2005, Conley entered an appearance as Pounds's trial counsel in FA-08.

On August 3, 2005, jurisdiction over FA-08, which had been initiated in Delaware Circuit Court Number 5, was transferred to Delaware Circuit Court Number 1, in which FA-02 had been initiated.

On September 13, 2005, Conley submitted on Pounds's behalf a motion to suppress evidence obtained during the execution of the search warrant in FA-08.  That motion challenged various aspects of the basis upon which the warrant was issued after the January 6, 2005, telephonic probable cause hearing.  On October 5, 2005, the trial court issued an order in which it stated that "the Court reviewed in open court and again in chambers the recording from the oral probable cause hearing," and denied Pounds's motion to suppress evidence.  (App. at 119.)

On October 18, 2005, Pounds (through Conley) filed a motion with the trial court in FA-08 seeking a <u>Franks</u> hearing, contending that Officer Stanley "knowingly and intentionally, or with reckless disregard for the truth, gave falsified testimony during the [telephonic] probable cause hearing."[6]  (App. at 122.)  On October 20, 2005, the State filed a

---

[5] I.C. § 35-50-2-8.

[6] <u>See</u> <u>Franks v. Delaware</u>, 438 U.S. 154, 155-56 (1978) (holding that "where the defendant makes a

4

motion to strike Pounds's motion.

During the pendency of Pounds's motion for a <u>Franks</u> hearing in FA-08, Pounds retained new counsel, Louis Denney ("Denney"), and Conley's appearance was withdrawn.

On November 23, 2005, Pounds, after having been advised by Denney that he could face an enhanced sentence as a result of the Habitual Offender allegation, entered into a plea agreement in FA-02, pursuant to which Pounds agreed to plead guilty to one count of Dealing in Cocaine, as a Class A felony. In exchange, the State agreed to dismiss the other charge of Dealing in Cocaine, as a Class A felony, and the Habitual Offender allegation. The trial court accepted Pounds's plea in FA-02. At a sentencing hearing on January 23, 2006, the trial court sentenced Pounds to thirty-five years imprisonment in FA-02.

Pounds's motion for a <u>Franks</u> hearing in FA-08 remained pending in the interim. On February 15, 2006, Pounds through Denney filed a second motion to suppress evidence in FA-08, which again raised issues related to the motion for a <u>Franks</u> hearing. On February 21, 2006, the State moved to strike this second motion to suppress. On February 24, 2006, the trial court granted the State's motion to strike both of Pounds's motions for a <u>Franks</u> hearing.

On March 9, 2006, still represented by Denney, Pounds entered a plea agreement in FA-08, in which he agreed to plead guilty to Maintaining a Common Nuisance, as a Class D felony, in exchange for which the State agreed to dismiss the remaining charges against him.

---

substantial preliminary showing that a false statement knowingly or intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [was] necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held" and if an allegation of perjury or reckless disregard is established by the defendant and the rest of the affidavit is insufficient to establish probable cause, "the search warrant must be voided" and any evidence obtained from its fruits excluded).

5

On the same day, the trial court sentenced Pounds to three years imprisonment in FA-08, and ordered Pounds to serve that sentence consecutively to the thirty-five year sentence the court had imposed in FA-02.

Pounds did not seek a direct appeal in either case. On May 17, 2011, however, Pounds filed verified petitions for post-conviction relief in both FA-02 and FA-08. Each petition raised a number of issues, all of which stemmed from Pounds's contentions that trial counsel—specifically, Denney—was ineffective. Specifically, Pounds contended that Denney failed to inform him that he was not eligible to be treated as a Habitual Offender, that Denney had a conflict of interest as a former and future deputy prosecutor, and, in FA-08, that Denney had failed to properly challenge the warrant because there was no recording or transcript of the telephonic probable cause hearing.

A consolidated hearing on Pounds's averments in FA-02 and FA-08 was conducted on January 10, 2012. After tender of proposed findings of fact and conclusions of law, the post-conviction court denied Pounds's petitions for relief.

This appeal followed.

**Discussion and Decision**

Standard of Review

Our standard of review in post-conviction proceedings is well-established.

In reviewing the judgment of a post-conviction court, appellate courts consider only the evidence and reasonable inferences supporting its judgment. Conner v. State, 711 N.E.2d 1238, 1245 (Ind. 1999). The post-conviction court is the sole judge of the evidence and the credibility of the witnesses. Fisher v. State, 810 N.E.2d 674, 679 (Ind. 2004). To prevail on appeal from denial of post-conviction relief, the petitioner must show that the evidence as a whole leads

6

unerringly and unmistakably to a conclusion opposite to that reached by the post-conviction court. Graves v. State, 823 N.E.2d 1193, 1197 (Ind. 2005). Where, as here, the post-conviction court enters findings and conclusions in accordance with Indiana Post–Conviction Rule (1)(6), we will reverse "upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." Ben–Yisrayl v. State, 729 N.E.2d 102, 106 (Ind. 2000) (quotation omitted), cert. denied, 534 U.S. 830, 122 S.Ct. 73, 151 L.Ed.2d 38 (2001). Only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, will its findings or conclusions be disturbed as being contrary to law. Miller v. State, 702 N.E.2d 1053, 1058 (Ind. 1998).

Hall v. State, 849 N.E.2d 466, 468-69 (Ind. 2006).

Here, Pounds appeals the post-conviction court's denial of his petition for relief after his entry of guilty pleas in FA-02 and FA-08. Our supreme court has observed that there are two main categories of ineffective assistance of counsel in such circumstances. Maloney v. State, 872 N.E.2d 647, 650 (Ind. Ct. App. 2007) (citing Smith v. State, 770 N.E.2d 290, 295 (Ind. 2002)). The first category is where trial counsel fails to advise a defendant on an issue, and that failure impairs or overlooks a defense. Id. The second is where trial counsel fails to correctly advise the defendant of the penal consequences of a plea. Id. Pounds designated issues involving both categories.

### Overlooked Defense

We turn first to Pounds's argument that his trial counsel overlooked a defense related to the conduct of a telephonic hearing, as a result of which a search warrant was issued for his residence in FA-08. Where a defendant seeking post-conviction relief contends that his counsel rendered ineffective assistance by overlooking or impairing a defense, the petitioner must show that a defense was overlooked or impaired and that asserting the defense would

7

likely have changed the outcome of the proceeding. Maloney, 872 N.E.2d at 650. A petitioner must show "that there is a reasonable probability that a more favorable result would have obtained in a competently run trial." Segura v. State, 749 N.E.2d 496, 507 (Ind. 2001).

Here, Pounds contends that the statutory process for telephonic probable cause hearings, by which police obtained a warrant to search his residence in FA-08, was not properly followed, and thus evidence obtained by the search was subject to exclusion at trial. Had his trial counsel pursued this theory, Pounds asserts, he would not have been subject to conviction for any of the charges in FA-08 and would not have pled guilty to Maintaining a Common Nuisance, as charged.

Ordinarily, police cannot obtain a warrant for search or arrest of an individual without a properly prepared and executed affidavit.[7] Ind. Code § 35-33-5-2 (setting forth the requirements for the substance and form of an affidavit required to obtain a warrant). An exception exists to the requirement for an affidavit, however, that permits a judge to "issue a search or arrest warrant without the affidavit required … if the judge receives sworn testimony of the same facts required for an affidavit: (1) in a nonadversarial, recorded hearing before the judge; (2) orally by telephone or radio; (3) or in writing by facsimile transmission (FAX)." I.C. § 35-33-5-8(a). The statute goes on to set forth certain procedural requirements for the warrant application. I.C. §§ 35-33-5-8(b) & (c). If a judge issues a

---

[7] Pounds does not contend that there was any absence of probable cause required for issuance of the warrant in FA-08, only that the statutory procedures associated with a telephonic probable cause hearing were not followed, and thus raises no question concerning any failure of trial counsel to properly challenge the warrant on either United States or Indiana constitutional grounds.

warrant after a telephonic hearing under subsection 35-33-5-8(a)(2), the statute requires that "the judge shall record the conversation on audio tape and order the court reporter to type or transcribe the recording for entry in the record. The judge shall certify the audio tape, the transcription, and the warrant retained by the judge for entry in the record." I.C. § 35-33-5-8(d).

This Court has reviewed several appeals where defendants have sought to suppress evidence obtained under warrants issued after telephonic probable cause hearings. As we have observed on several occasions, the statute permitting telephonic probable cause hearings exists "to encourage the procurement of warrants in situations involving exigent circumstances, when a warrant might not otherwise be sought." State v. Davis, 770 N.E.2d 338, 342 (Ind. Ct. App. 2002) (citing Cutter v. State, 646 N.E.2d 704, 713 (Ind. Ct. App. 1995), trans. denied). The statute does not have the effect of relaxing the requirements of probable cause. Id. Rather, the statute insures "that the party supplying information upon which a warrant is to be issued attests to a belief in the accuracy of his representations, and that the presiding magistrate also attests to the fact that proper procedures were observed." Id. "[O]ne of the purposes of the recording requirement is to insure that 'a reliable audiotape of the proceeding is made[.]'" Volz v. State, 773 N.E.2d 894, 898 (Ind. Ct. App. 2002) (quoting Cutter, 646 N.E.2d at 712). That record assures that both the trial court and this Court are able to independently verify the sufficiency of the warrant, and thus "an audio recording 'is an absolute necessity.'" Id. at 899 (quoting Davis, 770 N.E.2d at 343).

Interpreting the telephonic probable cause hearing statute, this Court has held that

9

where no recording was made, or even where an incomplete recording exists such that it makes impossible review of the basis upon which the issuing court found probable cause, the warrant fails and any evidence obtained through service of the warrant must be suppressed. Id.; Davis, 770 N.E.2d at 342. Where there are merely procedural difficulties, but review is possible of the substance of the representations from which probable cause was found, we have held that suppression may not be warranted. Creekmore v. State, 800 N.E.2d 230, 235-36 (Ind. Ct. App. 2003) (concluding suppression was not warranted where the unrecorded discussion pertained only to an incorrect set of directional coordinates); Cutter, 646 N.E.2d at 709, 712 (finding no basis for suppression where the transcript and recording were authenticated only after the defendant filed a motion to suppress evidence). A divided panel of this Court, however, concluded that while procedural irregularities may be overcome, it is impermissible for a trial court to reconstruct the contents of a telephonic probable cause hearing where there was no recording made, even where both the attesting police officer and issuing magistrate provide testimony. Volz, 773 N.E.2d at 899; but see id. at 900 (Bailey, J., dissenting).

In the present case, on January 6, 2005, a telephonic probable cause hearing was conducted, at the conclusion of which a search warrant was issued for Pounds's home. During a search conducted the following day, police discovered cocaine and marijuana in Pounds's home and arrested him as he attempted to leave the scene of the search. After twice moving unsuccessfully to suppress the evidence obtained during the search, Pounds entered a guilty plea to a single charge of Maintaining a Common Nuisance, as a Class D felony. He

10

now argues that his trial counsel's failure to challenge the availability of a recording and transcript of the telephonic probable cause hearing amounted to ineffective assistance of counsel. Pounds argues that the absence of the required recording and transcript would have rendered inadmissible the evidence obtained from the resulting search warrant and in turn would have precluded further prosecution for the offenses charged under FA-08. Trial counsel's failure to pursue this theory, he argues, led him to enter a guilty plea in FA-08.

In support of his argument, Pounds points to the CCS in FA-08. On August 2, 2010, post-conviction counsel for Pounds filed a motion seeking production of a transcript of the telephonic probable cause hearing. On August 12, 2010, the CCS states, "The Court Reporter advises attorney Wieneke that, upon review of the Court's recording records, no electronic recording took place prior to the issuance of the search warrant in this cause on January 6, 2005, at 7:15 p.m. Therefore, there will be no transcript available." (App. at 92.)

The post-conviction court rejected Pounds's argument. The post-conviction court noted that the trial court's order on Pounds's first motion to suppress reflected that a recording of the hearing had been played during the hearing on Pounds's motion and again in chambers when the trial judge was reviewing the motions: "[t]he Court held a hearing on the Motion, and the Court reviewed in open court and again in chambers the recording of the oral probable cause hearing." (App. at 119.) Consequently, the post-conviction court found:

> Pounds argues that counsel should have challenged the warrant as invalid because the oral probable cause hearing was not recorded. This is in fact not correct. The hearing was recorded, as reflected in this Court's Findings on the Motion to Suppress…. It is correct that the hearing was not transcribed and placed into the record, but the parties did not bring to the Court's attention that a transcript should be prepared. The Court finds the transcript is obviously

11

> intended to give the parties a record to review later. Pounds never challenged on appeal and does not challenge now whether the master commissioner had a basis for issuing the warrant…. Trial counsel did not render ineffective assistance on this issue. In addition, both the State and Pounds waived any error on this issue by not requesting the Court to prepare a transcript and place it in the Court's record for review purposes.

(App. at 222-23.)

The evidence here does not point solely in favor of Pounds's contention that the probable cause hearing was not recorded, and thus we cannot conclude that the post-conviction court erred. While the recording of the telephonic probable cause hearing was not available at the time of the post-conviction review, it is clear from the trial court's order on Pounds's motion to suppress that both parties and the trial court had access to the recording during the trial-level proceedings. Further, the same trial court judge who ruled upon the motion to suppress presided over Pounds's petition in this case, and was thus in a position to recall and take notice of the existence of the recording at the time of the hearing on the motion to suppress.

The purpose of the recording and transcription requirement is to ensure that a warrant obtained during a telephonic hearing may be subject to review for the existence of probable cause. Volz, 773 N.E.2d at 898-99. That review occurred in this case at the trial level, and Pounds's decision to plead guilty in FA-08 precluded him from appealing the trial court's determination at that time. Thus, the absence of the recording and transcript now is of no event. We therefore affirm the post-conviction court's denial of Pounds's petition for relief on the basis of the absence of a recording or transcript of the telephonic probable cause hearing.

12

<u>Improper Advisement of Penal Consequences</u>

Pounds also contends that he received ineffective assistance of counsel in both FA-02 and FA-08 because his trial counsel informed him that he could be subject to an enhancement of his sentence as an habitual offender when in fact Pounds was not subject to the enhancement. Upon seeking post-conviction relief, Pounds contends that trial counsel's performance was ineffective because it induced him to accept a plea agreement in both cases.

Pounds's argument falls into the category our supreme court has characterized as "claims of incorrect advice as to the law." <u>Segura</u>, 749 N.E.2d at 504. The <u>Segura</u> Court concluded that a petitioner for post-conviction relief may obtain relief when trial counsel's advisement as to the penal consequences was incorrect as to the law. To obtain relief in such cases, "the petitioner must allege … 'special circumstances,' or, as others have put it, 'objective facts' supporting the conclusion that the decision to plead was driven by the erroneous advice." <u>Id.</u> at 507. Thus, "a petitioner must establish, by objective facts, circumstances that support the conclusion that counsel's errors in advice as to penal consequences were material to the decision to plead." <u>Id.</u> The petitioner's mere allegation that he would not have pleaded guilty is insufficient to obtain relief. <u>Id.</u> "Rather, specific facts … must establish an objective reasonable probability that competent representation would have caused the petitioner not to enter a plea." <u>Id.</u>

Here, Pounds argues that his trial counsel improperly advised him that he would be eligible for a Habitual Offender enhancement, and had his counsel not so informed him, he would have proceeded to trial. Denney, who was Pounds's trial counsel at the time of his

13

plea agreements, and the State both concede that Pounds was not subject to such an enhancement in either FA-02 or FA-08. The State argues, however, that Pounds's decision to plead was not driven by counsel's erroneous advice and that Pounds received a substantial benefit from his guilty pleas, so that he is not now entitled to post-conviction relief. See Kistler v. State, 936 N.E.2d 1258, 1263 (Ind. Ct. App. 2010) (affirming the denial of post-conviction relief where a defendant obtained a reduction in charges as a result of a guilty plea), trans. denied.

In FA-02, Pounds was charged with two counts of Dealing in Cocaine, as Class A felonies, and was alleged to be an Habitual Offender. Pounds entered into a plea agreement, pursuant to which the State dismissed one of the two counts of Dealing in Cocaine and the Habitual Offender allegation, and the trial court sentenced Pounds to thirty-five years imprisonment. The sentencing range for a Class A felony at the time of Pounds's conviction ran from twenty to fifty years imprisonment, with an advisory sentence of thirty years. I.C. § 35-50-2-4.

Thus, by pleading guilty to a single count of Dealing in Cocaine, Pounds faced a maximum term of imprisonment in FA-02 of fifty years. Pounds and the State dispute the total sentencing range Pounds would have faced had he proceeded to trial, even without the imposition of the Habitual Offender enhancement. Pounds contends that his exposure was limited to fifty-five years imprisonment, and that it was unlikely that "a hypothetical reasonable defendant would have pleaded guilty in this case, instead of going to trial, to save himself only 5 years." (Appellant's Reply Br. at 6.) The State argues that Pounds faced up to

14

100 years imprisonment in FA-02 if he was convicted of both counts at trial, and thus received a significant benefit from his guilty plea such that, even with incorrect advice of counsel, Pounds did not by "specific facts … establish an objective reasonable probability that competent representation would have caused [him] not to enter a plea." Segura, 749 N.E.2d at 507.

Whether Pounds's exposure was 100 years or fifty-five years imprisonment, we agree with the State that Pounds has not established that competent representation would have resulted in a decision to go to trial. Though he received an aggravated sentence, Pounds nevertheless benefited from dismissal of one of the two Class A felony charges against him, apart from dismissal of the ultimately unsustainable Habitual Offender allegation. Moreover, Pounds's trial counsel testified that the evidence in each of the Class A felony charges was extremely strong, making success at trial very unlikely. We therefore cannot conclude that he would have decided not to enter a plea had trial counsel properly informed him of his ineligibility for the Habitual Offender enhancement.

To the extent Pounds makes a similar argument concerning his plea in FA-08, where the State also alleged he was a Habitual Offender and then dismissed the allegation upon Pounds's guilty plea, we reach the same conclusion. Pounds was charged with three felonies—one Class A felony, one Class B felony, and one Class D felony—and pled guilty to only the Class D felony charge of Maintaining a Common Nuisance, with the State dismissing the other charges. Thus, Pounds received a significant benefit from his guilty plea in FA-08, and we accordingly affirm the post-conviction court's denial of relief on that basis.

**Conclusion**

The post-conviction court did not err when it concluded that Pounds was not entitled to relief on the basis of ineffective assistance of counsel for an overlooked defense. Nor did the post-conviction court err when it decided that Pounds was not entitled to post-conviction relief despite incorrect advice of counsel concerning Pounds's eligibility for a Habitual Offender enhancement. We therefore affirm the court's denial of Pounds's petition for post-conviction relief.

Affirmed.

VAIDIK, J., and BROWN, J., concur.